**SECOND INJURY FUND, State of Texas (Industrial Accident Board), Appellant,**

**v.**

**Cefus GUIDRY, Appellee.**

**No. 6336.**

Court of Civil Appeals of Texas.

Beaumont.

April 14, 1960.

Rehearing Denied June 1, 1960.

Will Wilson, Atty. Gen., for appellant.

Marcus, Webber & Evans, Beaumont, for appellee.

McNEILL, Justice.

Appellee sued the Second Injury Fund of the State of Texas, administered by the Industrial Accident Board, in a District Court of Jefferson County, to recover benefits from said Fund, as provided in Section 12c-1, Article 8306, Vernon's Ann.Tex.Civ.St., for total and permanent incapacity resulting from a non-compensable childhood injury to his left eye and a subsequent compensable injury to his right eye, for which subsequent injury he was paid the equivalent of 100 weeks at the maximum rate of $25 per week, this subsequent injury having occurred on January 31, 1957, while in the course of his employment with Bechtel Corporation. The $2,500 compensation for the injury of January 31, 1957 was paid appellee under an agreed judgment of the U. S. District Court at Beaumont. In the present case appellee alleged that the prior or earlier injury resulted in blindness in his left eye and that the combined effects of the prior non-compensable injury and the subsequent compensable injury resulted in his total and permanent incapacity, for which he sought to recover judgment against the Second Injury Fund 301 weeks compensation at $25 per week.

Appellant filed its answer to this suit and therein asserted by plea to the jurisdiction and plea in abatement that no prior consent had been given by the Legislature to sue the State of Texas, that appellee failed to give notice of his injury of January 31, 1957, to the Second Injury Fund within thirty (30) days thereafter, that he failed to make claim against the Second Injury Fund within six (6) months thereafter, and further, that the "named defendant" had no legal capacity to sue or be sued. These pleas were heard in limine and were overruled.

Upon trial, the court submitted three special issues, and by their answers thereto the jury found 1) that the injury sustained by appellee on January 31, 1957, resulted in incapacity to work; 2) that it resulted in total incapacity to work and earn money; 3) that such total incapacity will be permanent. Upon this verdict the court rendered judgment decreeing that appellee recover from the Second Injury Fund, the State of Texas, administered by the Industrial Accident Board, compensation at the rate of $25 per week for 301 consecutive weeks from and after January 4, 1959, with four per cent interest on said installments from the dates of their respective maturities.

Appellant has appealed and presents nine points of error. The first and third points assert that the trial court was without jurisdiction of the suit since appellee failed to give notice of injury to the Second Injury Fund within thirty days after the accident of January 31, 1957, and failed to make a claim against the Second Injury Fund within six months after the date. As an alternative to the above, it is argued in appellant's 5th point that if the notice of injury given and claim for compensation filed by appellee for his subsequent injury of January 31, 1957, are construed to be sufficient notice and claim for compensation against the Second Injury Fund, since there was no timely notice of dissatisfaction nor suit filed against the Second Injury Fund following the order of the Board which held appellee failed to prove he received an accidental injury suffered in the course of his employment, that the present suit brought as the result of later express adverse action of the Board was not timely and must therefore fall. These contentions present the first of two

serious questions in the case and bring to focus the interrelationship between the Workmen's Compensation Act and the Second Injury Fund. Since the provisions of the Second Injury Fund of this state have been copied verbatim in two recent decisions, that of State v. Bothe, Tex.Civ. App., 231 S.W.2d 453, and Miears v. Industrial Accident Board, 149 Tex. 270, 232 S.W.2d 671, we will not do so again. For present purposes the pertinent part of the Second Injury Fund Act is Sec. 12c–1 which reads:

> "If an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently and totally incapacitated through the loss or loss of use of another member or organ, the association shall be liable only for the compensation payable for such second injury provided, however, that in addition to such compensation and after the combination of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for the total permanent incapacity out of the special fund known as 'Second Injury Fund,' hereafter defined."

The Act was originally passed in 1947 and remains the same except for one amendment, immaterial to the present case, enacted in 1955. The philosophy for and background of the Act are found not only in the emergency clause thereof but also in the opinions of the courts in the above mentioned cases. It is an Act to aid handicapped persons to obtain and hold places of work in industry. This, together with the fact that it has been held to be an integral part of our Workmen's Compensation Act, bespeak for it a liberal construction to give workmen the relief intended, and effectuate the beneficent purposes of the legislature.

The Attorney General very ably takes the position that since the Miears case, supra, and especially the opinion of the Court of Civil Appeals therein, reported in Industrial Accident Board v. Miears, 227 S.W.2d 571, holds that the Second Injury Fund is an integral part of the Workmen's Compensation Act one of two results in the present case must follow: Either 1) since no notice of injury nor claim for compensation were given to the Second Injury Fund within the 30 days and 6 months periods, respectively, after the subsequent injury January 31, 1957, and these requirements being jurisdictional under the Workmen's Compensation Act, appellee's case must fall; or 2) if it be construed that appellee's "Employer's First Notice of Injury" which was filed with the Board on February 20, 1957 or his "Notice of Injury and Claim for Compensation" for the subsequent injury which was filed with the Board March 27, 1957, could be construed as Notice to and Claim against the Second Injury Fund, and since the Board on May 28, 1957, made the final ruling on the claim as follows: "That named employee and his attorneys have failed to establish by proof that condition of which he complains is a result of accidental injury suffered in the course of his employment for subscribing employer herein as alleged. Therefore, said claim is denied," and having failed to give notice of his unwillingness to abide by the final ruling and decision of the Industrial Accident Board (which this prong of the argument assumes impliedly denied relief against the Second Injury Fund) and failed to file suit against the Second Injury Fund within 20 days after he should have given notice, appellee cannot recover by virtue of the judgment now appealed from. In short, the position of the Attorney General is that if the provisions of the Second Injury Fund are an integral part of the Workmen's Compensation Act then its provisions for notice, claim for compensation, notice of dissatisfaction and filing suit as required in ordinary claims must be complied with as applied to the Second Injury Fund before recovery against the special fund may be sustained.

After much consideration we have concluded that the Attorney General's posi-

tion is wrong. This is so as to notice of injury for the following reasons: The Second Injury Fund Act contains no provision for notice or claim against the Fund. The only provision of the Workmen's Compensation Act for notice and claim is Section 4a of Art. 8307. This section requires that notice shall be given within 30 days after the injury to the "Association or subscriber." Ordinary notice was duly given of the subsequent injury of January 31, 1957. This is what Section 4a requires. To sustain the State's view we would have to read into this section an amendment thereto requiring notice of a resulting disability that flowed or followed from the primary injury or accident of January 31, 1957. It has been held many times that the notice of injury required under Section 4a is actually notice of the accident; that if this is given as required, then no further notice of resulting incapacity that may flow or result from the accident need be given. Maryland Cas. Co. v. Haley, Tex.Civ.App., 29 S.W.2d 458 (W.R.); United States F. & G. v. Baker, Tex.Civ.App., 65 S.W.2d 344; Safety Cas. Co. v. Wells, Tex.Civ. App., 117 S.W.2d 879; Traders & General Ins. Co. v. Nunley, Tex.Civ.App., 82 S.W. 2d 715. Immediate notice of the "accident" so that the employer or insurer would be given an opportunity to investigate a fresh case is the object of the requirement. In order to require that notice of the primary accidental injury be given to the special fund a second notice under Section 4a would have to be read into it. We are not at liberty to do this. To add to or change the requirement of the section involved is a legislative and not a judicial function. But, the Attorney General argues that the Board as administrator of the Fund is entitled to the same notice of injury and claim as the insurance carrier. It is not thought that this necessarily need follow. Evidently the legislature in creating the Fund and attaching no notice of claim provision thereto acted on the assumption that the employee's notice given the employer or the insurance carrier with reference to the second or subsequent injury would be available to the Board in administering the Second Injury Fund. All proceedings with reference to claims for compensation, payment and settlements, under the Workmen's Compensation Act are required to be channeled through and approved by the Industrial Accident Board; consequently the Board is in possession of the material factors surrounding an employee's injury. It may well be stated that in the record before us it is reflected that "notice of injury and claim for compensation" was filed for the loss of the right eye with the Board on March 27, 1957; and on May 23, 1957, while said claim was still pending before the Board, appellee filed with the Board a medical report of Dr. H. J. Kaplan, of Beaumont, a specialist, reporting on an examination of appellee in connection with the claim in which he stated: "Of additional interest in the past history is a blow on the left eye with resulting defective vision of the left since the age of thirteen." The doctor further states the vision in the left eye to be 20/300. The information reflected in appellee's file in the Industrial Accident Board office was available to the Board. This is sufficient. In this connection see the case of Anderson v. Potlatch Forests, 77 Idaho 263, 291 P.2d 859, by the Supreme Court of Idaho.

To sustain our view that the initial claim for compensation against the Second Injury Fund need not be made within 6 months after the accident we set forth the following: Section 4a, of course, has no such express requirement and we are not at liberty to read such requirement into it. This we think is fully supported by the language of the Second Injury Fund itself. The legislature in enacting the special injury fund did not provide for procedure in respect thereto except "—that in addition to such compensation (for the second injury) and after the combination of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for the total permanent incapacity out of the special fund known as the 'Second Injury Fund' hereinafter de-

fined." This quoted section contemplates but does not require that the Board shall pay out of the special fund the balance for total and permanent incapacity only after "the loss, or loss of use, of another member or organ" has been finally established. The contingent claim against the Fund, therefore, does not become certain until it is finally established that there is total loss or loss of use of the member or organ constituting the subsequent injury. The claim against the Fund in the present case was made 21 days after the date of the judgment awarding appellee full compensation for loss of his right eye. Appellee suggests that such claim may be made within a reasonable time thereafter, or at least within a period of six months thereafter. He likens the present case to that of the claim of an employee who while in the scope of his employment with his employer was injured by the negligence of a third party. In such case having pursued his initial remedy against the employer's insurance carrier to conclusion, he and the carrier thereafter have two years to institute their third party action. There is some merit to the analogy suggested. However, without making a choice between the suggested reasonable time or within the six months period we hold that the claim against the Fund in this case was timely and overrule appellant's 1st, 3rd and 5th points.

Appellant's 2nd and 4th points need only brief notice. The 2nd one asserts that the trial court should have abated the suit because it was one against the Second Injury Fund which is not a legal entity and has no capacity to sue or be sued. The petition describes the defendant (appellant) as the "Second Injury Fund, the State of Texas, administered by the Industrial Accident Board of Texas," and the judgment appealed from similarly describes the defendant. This makes the action, in effect, one against the State of Texas in its capacity as trustee of the fund.

The 4th point is an alternative one. If it is held that the notice of injury and claim sections of the Workmen's Compensation Act do not apply, then appellant contends that no right of appeal lies from the ruling of the Board on Second Injury Fund claims. The questions in the 2nd and 4th points are foreclosed against appellant. The present proceeding is sustained on authority of the Miears case, supra, 227 S.W.2d 571(4); 232 S.W.2d 671.

While appellee's claim against Second Injury Fund was still before the Board he was directed by the Board to report to Dr. Sam B. Lyons, an eye specialist of Beaumont, for examination. This examination was made and report filed with the Board. Dr. Lyons testified as a witness for the appellant upon the trial and his testimony supported appellant's view that appellee still had substantial vision in his right eye. While the case was pending in the trial court and before trial, appellant filed its motion requesting the court to require appellee to submit to an eye examination by Dr. Jerry Johnson, an eye specialist of Beaumont. No specific grounds for having the examination were set forth in the motion. Upon a hearing the motion was denied. Dr. Johnson was the medical expert to whom appellee was sent by his employer when he first sustained the injury of January 31, 1957. This injury was caused by dry cement blowing into his right eye. Dr. Johnson cleaned his eye out and treated him for a number of weeks after the injury and saw him thereafter occasionally to May, 1958. Upon the trial appellant undertook to question appellee as to whether he would be willing to go to this doctor for a further examination. Objection was made to this type of examination and appellee moved in chambers to require appellant to refrain from questioning appellee with reference to whether he was willing to go back to Dr. Johnson for an examination. Appellant's 6th point urges that the trial court committed error in refusing to grant the above motion for physical examination and in cutting off its right

to inquire before the jury about appellee's refusal to be further examined by Dr. Johnson. Section 4 of Art. 8307 provides that the Board, or Court on appeal, has the right of requiring an injured employee to be examined by a physician of its choice under certain conditions. This is a matter left to the sound discretion of the trial court. Under the facts in this record we do not think the judge abused his discretion in declining to grant the additional physical examination. Wallace v. Hartford Accident & Ind. Co., 148 Tex. 503, 226 S.W. 2d 612. In connection with the second section of the point, that is, the granting of the motion cutting off appellant's right to inquire before the jury whether appellee would be willing to be examined by Dr. Johnson, it must be remembered that this doctor was appellant's private physician. It asserts that its object in asking appellee the question before the jury was in order that his refusal to be examined could be considered by the jury in determining the credibility and sufficiency of the testimony upon which appellee sought to recover herein. Appellant cites the leading case of Austin & N. W. Ry. Co. v. Cluck, 97 Tex. 172, 77 S.W. 403, 408, 64 L.R.A. 494, as supporting its view that the court should not have restricted the cross examination upon the point in the presence of the jury. We think the situations in the Cluck case are materially different from those in the present. In the former the plaintiff was asked the question whether he would be willing to be examined by a committee of competent physicans to be appointed by the court. Objection to this question was sustained by the court and this ruling was held to be error. The Supreme Court there stated:

> "The reason for refusing a physical examination of the plaintiff is not that the defendant is not entitled to have the benefit of the evidence, but because the court has no power to force the plaintiff to submit to such an examination. He has a right to submit or refuse, but, in case he should refuse, the defendant is entitled to have that fact go to the jury to be considered by them in determining upon the credibility and sufficiency of the testimony upon which he seeks to recover."

At the trial in the present case appellant desired to bring out before the jury the fact that appellee would refuse to be examined again by appellant's physician, Dr. Johnson; this in order to question appellee's good faith. The holding in Artesian Belt Ry. Co. v. Young, Tex.Civ.App., 155 S.W. 672, 673, is contrary to appellant's contention. The court there said:

> "In the Cluck Case and in the Booth Case the proposition was made to the plaintiff that he submit to examination by disinterested physicians, or physicians appointed by the court. No case has yet gone so far as to say that the refusal of a plaintiff in a suit for personal injuries to submit his person to the examination of the defendant's private physician is a pertinent and material fact to go to the jury upon the question of the plaintiff's good faith. The reason, as laid down by the Supreme Court, for the admission of such evidence is sound and salutary. It is based upon the fact that while the party claiming to be injured has the right to submit to a physical examination, or to refuse to do so, as he may prefer, if he does refuse the defendant has the right to have that fact made known to the jury so that they may draw from his action such deductions as they may think proper. But reason and justice do not require that he submit himself to the examination of interested or partisan physicians, nor that his refusal to do so should be used against him on the trial as a circumstance against his good faith."

See also, 24A Tex.Jur. 540–541. Under the facts in this record point 6 does not reflect error.

Appellant's 7th point asserts that the trial court erred in sustaining appellee's

objection made to appellant's counsel questioning Dr. Jerry Johnson on the basis of corrected vision in appellee's right eye. Appellant's counsel asked the question: "Q. Now, if a man's eyes are corrected to 20/25 how does that compare with a man who has vision of 20/20?" Objection was made to the question and the court sustained it. Appellant has failed to show what the answer to the question would have been. No complaint, therefore, may be heard on appeal. In addition, Dr. Johnson was allowed to testify to the corrected vision that glasses would afford appellee. The following questions and answers took place after the ruling set out above:

> "Q. In your opinion, your medical opinion, doctor, how well can Cefus see out of his right eye? A. Well, again we get back to either the 20/40 or 20/50, he is given 20/50 without glasses, and 20/25 with glasses. That's * * * as far as being blind in that eye, of course, it is far from it.
>
> "Q. You say he is far from it? A. As far as his right eye is concerned, yes. Quite close to it as far as his left eye is concerned."

Appellant's point is overruled.

Having pleaded as defense to appellee's action that any incapacity to work which he had or will suffer is and will be partial and not total, appellant requested the trial court to submit the following special issue:

> "Do you find from a preponderance of the evidence that the Plaintiff has (or will) suffered partial incapacity as a result of his injury, if any."

In a separate request appellant presented the following definition of "partial incapacity":

> "Partial incapacity, as used in the Court's Charge means ability to perform some of the duties of an ordinary workman; in other words, any disability less than 100%."

The court refused both the issue and the instruction, and appellant in its 8th point asserts this was error. The failure to submit the defensive issue presents the second serious question of the case. After most careful consideration we have concluded the failure to submit it was error requiring reversal of the case. While this court may have taken a different view had the question been a new one, we feel that precedent for affirmative submission is too firmly established to hold otherwise. Texas Ind. Ins. Co. v. Thibodeaux, 129 Tex. 655, 106 S.W.2d 268; Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314; 3 McDonald, Texas Civil Practice, pp. 1073–1075; Hodges Special Issue Submission in Texas, pp. 40–44. Appellee relies upon Safety Cas. Co. v. Teets, Tex.Civ. App., 195 S.W.2d 769, 770 (W.R.) by this Court. However, it does not appear to control the present case as the usual issues of total and partial incapacity were unconditionally given in the charge of the court, and the requested issues amounted "to no more than an inquiry as to the duration of appellee's disability, that is to whether such disability was permanent or temporary."

While appellee here in order to recover must show total and permanent incapacity, the affirmative defenses of partial and temporary incapacities are still available thereto. Although not necessary to the decision, the court in the Thibodeaux case, supra, used language presently apropos:

> "To illustrate a fact case in which it seems obvious that an unconditional submission of partial incapacity as a defense would be required: A sues B, a compensation insurer, alleging total incapacity. B defends alone on partial incapacity, admitting an injury, but claiming same did not result in total permanent incapacity. With the issue solely of whether there is total or partial incapacity, the former as a basis of recovery, the latter as a defense, would we expect any judicial tribunal to ignore the only defense relied on, justifying such position with the reason-

ing that a submission of total incapacity for the plaintiff made it unnecessary to submit partial incapacity as defense, lest the submission of the latter might lead to conflicting findings? We think not."

We think the tendered definition of "partial incapacity" is not a correct one and the court correctly refused it. Appellant asserts it was approved in Tex. Employers' Ins. Ass'n v. Brock, Tex.Com.App.1931, 36 S.W.2d 704, but a careful reading of the entire opinion in that case does not support this view. The language quoted: "any disability less than 100%" impinges upon the usual definition of "total incapacity." 100% ability to work and earn money is to the Workmen's Compensation Act what the "ordinary prudent man" is to the law of negligence. Relatively few individuals, perhaps, satisfy either standard in every respect. A workman sustains "total incapacity" if he is "disqualified from performing the usual tasks of a workman in such a way as to enable him to both obtain and retain employment" although it "does not imply an absolute disability to perform any kind of labor." This definition does not set such total disability at 100%, nor for that matter at 99 or 95%. Many approved definitions of "partial incapacity" may be obtained without attaching the objectionable language above quoted on another trial.

The last point of error complains that the trial court erred in granting a writ of execution upon the judgment rendered. The point is sustained.

> "A Judgment against the State cannot be enforced by a seizure and sale of its property, but it may be paid by an appropriation of money for that purpose. 38 Tex.Jur. 675, State, Section 72." (Revised.)

For failure to give the requested issue on partial incapacity, the cause is reversed and remanded.