**INDUSTRIAL ACCIDENT BOARD of the State of Texas, Appellant,**

v.

**Albert J. PARKER, Appellee.**

**No. 7248.**

Court of Civil Appeals of Texas.

Texarkana.

July 19, 1960.

Rehearing Denied May 16, 1961.

Second Motion for Rehearing Denied June 13, 1961.

John L. Estes, Asst. Atty. Gen., for appellant.

Art Clifton, Grand Prairie, for appellee.

CHADICK, Chief Justice.

This is a suit by an injured workman for benefits payable out of the Second Injury Fund. The Second Injury Fund Act, Sec. 12c–1, 12c–2, Art. 8306, became a part of the Texas Workmen's Compensation Law by an amendment in 1947. The judgment of the trial court awarding benefits is reversed and the case remanded for new trial.

Following denial of compensation by the Industrial Accident Board the appellee, Albert J. Parker, as plaintiff in the trial court, appealed by bringing this action against the Industrial Accident Board of the State of Texas in its capacity as administrator of the Second Injury Fund, as defendant, in a District Court of Dallas County. The trial judge directed a verdict upon all issues except that of lump sum payment. When the jury found in favor of Parker on the lump sum issue judgment was entered reciting that Parker was totally and permanently disabled and entitled to compensation benefits for 276 weeks at the rate of $35 per week. A total recovery of $9,660 with interest, costs, etc., was awarded and ordered paid out of the Second Injury Fund. The Board, in its special capacity, has perfected an appeal and briefs three points of error.

The facts in the case are uncontroverted, although the parties did not stipulate them. In May of 1946, Mr. Parker in an automobile mishap in the State of Pennsylvania lost his left arm to a point six or seven inches below the shoulder. He received no workmen's compensation, or other recompense for the loss. On September 3, 1957, while employed by the Dew Construction Company and engaged in the performance of his duties he fell from a dirt loading machine, which ran over and crushed his left foot. Treatment of the foot required amputation of the great toe and the adjacent second toe, and the connecting metatarsal bones of the foot. The Board's medical examiner, weighing the incapacity caused by the foot injury and the arm loss, pronounced Mr. Parker totally and permanently disabled to do the usual tasks of a workman and physically unfit to obtain and retain employment. No medical or other witnesses disagreed with this opinion.

The Argonaut Underwriters Insurance Company, the Construction Company's compensation carrier, immediately after the injury began $35 weekly compensation payments to Mr. Parker. On September 10, 1957, Parker filed formal notice of his injury with his employer and the Board. On August 20, 1958, after being paid $1,627.50 by the insurance carrier he entered into a settlement for a lump sum payment of an additional $1,968.75 in discharge of the carrier's liability. The settlement was on the basis of benefits for 125 weeks for the loss of a foot under Art. 8306, Sec. 12.

Prior to settlement on April 10, 1958, D. U. Parker, a son, wrote the Industrial Accident Board in behalf of his father, and stated that the insurance carrier's adjuster, in the course of settlement negotiations, had tried to explain "something about Second Accident Fund", and asked to be informed respecting it. The Board replied on April 14 and asked for further information. Correspondence followed and on October 1st, 1958, Parker filed his claim against the Second Injury Fund with the Board. Thereafter, on January 16, 1959, the Board denied the claim. Notice of intention to appeal was given and suit was timely filed.

The Industrial Accident Board by its three points of error pose the following questions:

1). Must Parker plead and prove the State's consent to be sued on this claim prior to filing his suit?

2). Is the trial court without jurisdiction to render judgment when it is conclusively shown that Parker failed to make a claim against the Second Injury Fund within a period of six months after the accident and injury occurring September 2, 1957?

3). Does Parker's appeal from the Industrial Accident Board denial of his claim against the Second Injury Fund fail because there is no provision in the Workmen's Compensation Law for appeals in such cases?

It is the opinion of this court that a negative reply is proper to each of these questions.

In construing the provisions of the Second Injury Fund Act, in conjunction with the other provisions of the Workmen's Compensation Law, the interpretation most beneficial to injured employees and which will best promote the purposes of the act will be employed. It has frequently been stated by the courts that the primary purposes of the Workmen's Compensation Law is to benefit and protect injured employees. See Fidelity & Casualty Co. of New York v. McLaughlin, 134 Tex. 613, 135 S.W.2d 955; Woolsey v. Panhandle Refining Co., 131 Tex. 449, 116 S.W.2d 675; Brinkley v. Liberty Mutual Insurance Company, Tex.Civ.App., 331 S.W.2d 423, n. w. h. And that the Workmen's Compensation Law should be construed liberally in favor of the injured workman. Huffman v. Southern Underwriters, 133 Tex. 354, 128 S.W.2d 4, and Miears v. Industrial Accident Board, 149 Tex. 270, 232 S.W.2d 671. It is an elementary rule of construction that all of the provisions of the Workmen's Compensation Law must be construed together and in such manner that if possible the provisions will operate in harmony. Zurich General Accident & Fidelity Ins. Co. v. Walker, Tex.Com.App., 35 S.W.2d 115.

Very little discussion will suffice to dispose of the first question. A suit was filed and maintained without permission other than that impliedly given by the Second Injury Fund Act, in Industrial Accident Board v. Miears, Tex.Civ.App., 227 S.W. 571, reversed in part 149 Tex. 270, 232 S.W.2d 671. The opinion in that case reveals that an injured workman appealed from the award of the Industrial Accident Board in a Second Injury Fund case to the district court of the county where the second injury occurred. The State's Attorney General, as counsel for the Board, filed a plea of privilege to remove the action to a district court of Travis County. The plea of privilege was overruled and on appeal the Court of Civil Appeals held that Art. 8307, Sec. 5, governed appeals in a Second Injury Fund action. The Supreme Court reversed the Court of Civil Appeals in part upon another point, but the decision by both courts presupposes and inferentially confirms the right of an injured workman to proceed against the Second Injury Fund without special Legislative permission, aside from that impliedly granted by the act. Perhaps it should be acknowledged that neither the Court of Civil Appeals nor the Supreme Court in the Miears case passed upon precisely the question presented here. However, decision on the question considered supports a right of appeal in the injured workman and of necessity the prior right to bring an action by authority of the statute. Those cases approved the view that Sections 12c-1 and 12c-2 are integral parts of the State's Workmen's Compensation Law, and are in every respect of equal materiality with its other provisions. The purpose of the Second Injury Fund and its inclusion within the body of the Workmen's Compensation Law excludes any construction except that the legislature intended to and impliedly granted consent for the State to be sued as was done in this case in the administration of the Second Injury Act's provisions.

The third point, that is, that Parker has no statutory appeal from the denial by the Industrial Accident Board of his

claim for compensation from the Second Injury Fund· is urged by the Board only in the event it should be held that the re-· quirements of Art. 8307, Sec. 4a relating to notice of claims be held not applicable in an action for benefits from the Second Injury Fund. The views just expressed and the discussion which follows demonstrate that such notice and claim provisions do govern in second injury cases; therefore, it will not be necessary to discuss the third question presented and the Board's point in that respect is respectfully overruled.

█ The Legislature engrafted the provisions of the Second Injury Fund Act upon the existing Workmen's Compensation Law structure, without providing a detailed procedure for its operation, evidencing by such enactment and the language used an intent that it be administered as a part and in harmony with the existing law. The several provisions of the Workmen's Compensation Law being in pari materia, it follows that it was the intention of the Legislature within certain limitations that the Second Injury Fund be administered in accordance with the existing laws governing claims by injured workmen against compensation insurers generally. Therefore, it may be said, it was the intention of the Legislature in second injury cases that the Second Injury Fund be substituted for the compensation insurer in the administration of the law to the extent necessary to accomplish the purposes of the Second Injury Fund Act. It is the legislative intention that the Second Injury Fund stand as the compensation insurer in Second Injury cases so far as a just and harmonious interpretation of the numerous provisions of the compensation law will permit. However, this does not mean that a substitution was intended concerning subject matter exclusively within the competence of a compensation insurer, or conferring a benefit enjoyable only by the insurer, or a duty which the insurer alone could execute; nor where to substitute would result in a conflict or hiatus in pro-

visions, or a nullification of the purposes of the Compensation Law. The text of Art. 8307, Sec. 4a is as follows:

"Unless the Association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the Association or subscriber within thirty (30) days after the happening of an injury or the first distinct manifestation of an occupational disease, and unless a claim for compensation with respect to such injury shall have been made within six (6) months after the occurrence of the injury or of the first distinct manifestation of an occupational disease; or, in case of death of the employee or in the event of his physical or mental incapacity, within six (6) months after death or the removal of such physical or mental incapacity. For good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing of the claim before the Board."

The construction announced requires that Parker give notice and ˙ file claim in accordance with the provisions of this section.

From the preliminary statement it is seen that the Industrial Accident Board and the compensation carrier were notified of the September 3rd injury Parker suffered to his left foot the following September 10th, a time well within the 30 day period specified by Art. 8307, Sec. 4a. Such action satisfied the notice of injury requirement insofar as the Second Injury Fund is concerned.

The record is conclusive that notice of claim for compensation out of the Second Injury Fund was not filed with the Board until October 1, 1958, one year and 27 days after injury. It is the State's contention that this conclusive showing bars a recovery by Parker from the Second Injury Fund,

and that the judgment of the trial court should be reversed and the case rendered. Such disposition of the appeal is not warranted by the record. There is evidence previously mentioned indicating that prior to April 14, 1958, Parker was ignorant of his right to make a claim against the Second Injury Fund. Within six months after that date on October 1, 1958, he filed a claim for compensation out of the fund. The record is not fully developed with respect to the time Parker first became aware of his rights under the Second Injury Fund Act. The case seems to have been tried upon the theory that the provisions of Art. 8307, Sec. 4a were not applicable to Parker's claim, and that pleading and proof of good cause for delay in making the claim was not necessary. The State by plea to the jurisdiction and special exceptions directed the trial court's attention to the error in failing to apply the provisions of Sec. 4a, but the absence of pleading and proof of good cause appears not to have been presented or considered by the trial court or the parties. Justice requires that the case be reversed and remanded. Lanford v. Smith, 128 Tex. 373, 99 S.W.2d 593; Jackson v. Hall, 147 Tex. 245, 214 S.W.2d 458.

Remand and a new trial necessitates some further discussion of good cause for Parker's failure to present his claim within the six month's time limit of Art. 8307, Sec. 4a. Ignorance of the right to claim compensation was considered a good cause for failure to make a claim within the time specified by Sec. 4a, prior to a 1923 amendment to the Workmen's Compensation Law. See Bailey v. Texas Indemnity Ins. Co., Tex.Com.App., 14 S.W.2d 798; Lawler's Texas Workmen's Compensation Law, p. 417, Sec. 244. The 1923 amendment provided that when notice was furnished to the Industrial Accident Board by an employer that the employer was a subscriber under the Act, an injured employee was conclusively presumed to have notice of the fact that the employer had made provision for compensation insurance. See Zurich General Accident and Fidelity Insurance

v. Walker, Tex.Com.App., 35 S.W.2d 115. The 1923 Amendment governs in a factual situation involving an employer, an employee and the Board. This factual situation can have no counterpart in Second Injury Fund cases, because there are no parties occupying similar relationships under the compensation scheme of the Second Injury Fund Act.

The rule requiring liberal construction of the compensation law in favor of the injured workman dictates that it be held that if Parker establishes that he was ignorant of the existence of the Second Injury Fund and his rights thereunder such ignorance would be good cause for his failure to make a claim within the time limitation of Sec. 4a.

Justice requires the case be reversed and remanded for new trial, and it is so ordered.

On Motion for Rehearing

After delivery of the original opinion herein on July 19, 1960, this court became aware of the case of Second Injury Fund v. Guidry, Tex.Civ.App., 336 S.W.2d 785, when the opinion in that case was published in the Southwestern Reporter's advance sheet. Both cases had several common questions. Application for writ of error was made to the Supreme Court, and was pending in the Guidry case when time for action on the Industrial Accident Board's Motion for Rehearing matured in this case. It was deemed desirable to await the Supreme Court's disposition of the Guidry appeal, as it appeared that several of the common questions vital to disposition of the appeal in each one would probably be determined in the Guidry action. The parties to this case were so notified. The Supreme Court has now rendered its decision in the Guidry case. See Industrial Acc. Bd. v. Guidry, Tex., 345 S.W.2d 509; Motion for Rehearing overruled the 10th day of May, 1961.

In its Motion for Rehearing the Industrial Accident Board takes the position that the decision to reverse and remand the trial

court judgment herein rests upon 9 basic errors. Two of the points justify discussion and clarification. One of these two points is that this court ignores the rule that good cause must exist until the claim is actually filed for failure to claim compensation within six months as required by Art. 8307, Sec. 4a. The rule is stated in Petroleum Casualty Company v. Dean, 132 Tex. 320, 122 S.W.2d 1053, op. adopt. The other point is that the case should not be reversed to allow the appellees to plead good cause for failure to give notice and make claim when that question was not before the trial court initially.

The appellee's son wrote the Industrial Accident Board in behalf of his father on April 10, 1958, and stated a representative of the compensation insurer had suggested an inquiry about a "second accident fund". The Board's reply of April 14 gave a brief résumé of the second injury fund's function, and asked to be advised whether or not Mr. Parker had collected compensation for the loss of his left arm, and asked that the Board be furnished with a current medical report describing Mr. Parker's condition as the result of the September 3, 1957 injury, stating that after receipt of the requested information the Board would advise Mr. Parker further regarding his eligibility for benefits from the second injury fund.

Replying to the Board on April 30, the Parkers forwarded a medical report, and advised that no compensation was collected as the result of the arm loss. May 1st the Board responded to this last Parker letter by acknowledging receipt of it and the medical report, and stated, "As soon as the insurance carrier has completed payment of compensation for the injury received on September 3, 1957, we should be notified, so that we can consider *your Father's claim for additional benefits from the Second Injury Fund.* * * * By way of explanation, the Second Injury Fund's liability does not commence until all benefits have been paid for the injury received during the course of employment." (Emphasis added.) The claim against the insurance carrier for compensation attributable to the accident of September 3, 1957 was settled August 20th, and the settlement approved by the Board August 22, 1958; thereafter Parker's claim against the Second Injury Fund in affidavit form dated September 30 was received by the Board October 1, 1958.

The Board's letter of May 1st indicates that the Board did in fact treat Parker's letter of April 10 as a notice of claim against the Second Injury Fund, and considered the claim to be before the Board subject to determination when the claim against the compensation insurer for the injury of September 3rd had been paid. In addition it may be assumed without so holding in the absence of all relevant facts, that the statement in the Board's letter of the time in which consideration would be given to the claim against the Second Injury Fund is Board policy, and its advice as to when a claim would be considered, could constitute a waiver of the timely filing of a prescribed claim form. Parker should not be required to use more diligence in the prosecution of his claim for compensation against the Second Injury Fund than an ordinarily prudent person acting under the same or similar circumstances would exercise in the transaction of his own business. Such is the rule in a claim against an insurance carrier. See Texas Indemnity Ins. Co. v. Cook, Tex.Civ.App., 87 S.W.2d 830, er. ref.

In the original opinion this court expressed the view that timely notice of the September 3, 1957 injury was given insofar as it affected Parker's claim against the Second Injury Fund. It was thought that such notice was sufficient under Art. 8307, Sec. 4a, because Section 4a only requires notice of the injury to the association or subscriber within 30 days after injury. The 30 day notice provision does not require that notice of a claim for compensation be made within the 30 day limit. The notice required is confined to injury. However, in the Guidry case it is said [345 S. W.2d 511]:

"The contention is made, however, that under Section 4a, Article 8307, supra, a claimant who seeks to recover benefits from the Second Injury Fund on account of the combined effects of a prior noncompensable injury * * * *must* put the Board on notice within thirty days after the *occurrence* of the second injury that he is claiming benefits from the Second Injury Fund and likewise *must* file formal claim for benefits against the Second Injury Fund within six months from the date of his compensable or second injury. We agree with this contention."

And again in the next to last paragraph of the Supreme Court's opinion it is said:

" * * * To deny the Board the right to notice within thirty days after the accident that a claim against the Second Injury Fund was to be asserted, as well as the claim against the insurance carrier, would deprive the Board of the valuable right of making an immediate investigation of the facts upon which the employee based his claim for compensation from the Second Injury Fund."

The Supreme Court having concluded that the notice of injury within 30 days of the happening of the second injury and notice of a claim against the Second Injury Fund must be asserted in like time does not materially change the situation presented by this record. It merely requires that it be pointed out that if ignorance of the existence of the Second Injury Fund and its liability for additional compensation constitutes good cause for failure to file a claim for benefits within six months of the date of the second injury, the same facts would excuse failure to give notice of an injury and indicated a claim against the Fund within 30 days.

In the original opinion the view was expressed that justice required that the case be reversed and remanded rather than rendered because the record indicated that if the evidence was fully developed good

cause for failure to give the notice and assert the claims within the time required by Art. 8307, Sec. 4a might be shown. The Board's point challenges this disposition of the case.

■ The only serious doubt that can arise in this connection is whether or not pleading good cause would be the assertion of a new or different cause of action or merely an amendment to fully state the nature of the action already plead. It is thought that such pleading would constitute a permissible amendment. The case is ordered reversed and remanded by authority of Rule 434, Vernon's Texas Rules of Civil Procedure; Williams v. Safety Casualty Company, 129 Tex. 184, 102 S.W.2d 178, op. adopt.; Hicks v. Matthews, 153 Tex. 177, 266 S.W.2d 846; Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792; London Terrace v. McAlister, 142 Tex. 608, 180 S.W.2d 619; Turner v. Texas Company, 138 Tex. 380, 159 S.W.2d 112; Citizen's Bank v. Terrell, 78 Tex. 450, 14 S.W. 1003.

The Industrial Accident Board's motion for rehearing is respectfully overruled.

Second Motion for Rehearing

With reference to good cause excusing notice and claim required by Art. 8307, Sec. 4a, the incisive second motion for rehearing filed in behalf of the Industrial Accident Board makes the point that Parker's lack of knowledge of the Second Injury Fund and its coverage is a mistake of law on his part. It then points out that a mistake of fact, that is, want of knowledge that an employer had provided compensation insurance for his employees, is the subject of the case cited in the original opinion, dealing with good cause prior to the 1923 amendment, and that such case is not determinative of a mistake of law case such as this.

■ The merit of such contention and questions associated or arising out of it need not be discussed, and are to be disregarded because this case may be remanded for another reason. The record indicates that

Parker may have been unaware of the fact that he was permanently and totally incapacitated by the dismemberment involved. There is evidence that medical opinions were rendered to him, by his own physician and by a medical examiner selected by the Board, that the injury to his foot resulted in only 70% disability to that member. Prior to filing formal claim in affidavit form on October 1, 1958, no medical practitioner had advised him otherwise. After settlement with the insurance carrier he returned to his employer and presented himself for work, but was denied employment. From the facts in the record it appears that it was after being rejected, the exact date not appearing, that he began to realize his condition made him unemployable, and that in fact he was permanently and totally disabled to perform the ordinary duties of a workman, etc. Further development of the facts regarding the time he knew, or as an ordinarily prudent man should have known, the true nature of his incapacity should be developed.

■ It has frequently been held that a workman's ignorance of the nature or extent of his injury, especially where he relies upon the opinion of his employer's physician or for other reasons believes that his injury is trivial and not calculated to be disabling, is good cause for failure to give notice or make claim, provided he acts promptly in this respect when he discovers his error. See Maryland Casualty Co. v. Cobb, 5 Cir., 131 F.2d 603; Texas Employers' Ins. Co. v. Jones, Tex.Civ.App., 70 S.W.2d 791, affirmed Tex.Com.App., 128 Tex. 437, 99 S.W.2d 903, op. adopt.; Commercial Standard Ins. Co. v. Hayes, 135 Tex. 288, 142 S.W.2d 897; affirming Hayes v. Commercial Standard Ins. Co., Tex.Civ. App., 140 S.W.2d 250; Consolidated Underwriters v. Pruitt, Tex.Civ.App., 180 S. W.2d 461, wr. ref.; Hartford Accident & Indemnity Co. v. Jackson, Tex.Civ.App., 201 S.W.2d 265, wr. ref.; Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S. W.2d 370. By analogy, Parker's good faith belief that he was not permanently and totally incapacitated, if it is found such was his belief, would excuse his failure to notify the Board and make claim, if after realization that the combined effect of the loss of his arm and foot rendered him permanently and totally incapacitated, he promptly gave notice and made claim in substantial compliance with the directions of Sec. 4a, Art. 8307.

The order for remand has strong support in Williams v. Safety Casualty Co., 129 Tex. 184, 102 S.W.2d 178, op. adopt. The failure to appeal from the order of the Industrial Accident Board within twenty days from its rendition as directed by Art. 8307, Sec. 5, would account for the absence of an order of remand in Industrial Accident Bd. v. Guidry, Tex., 345 S.W.2d 509.

The Second Motion for Rehearing is respectfully overruled.