

# THE ATTORNEY GENERAL
## OF TEXAS

JOHN L. HILL
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

November 23, 1976

The Honorable Cue O. Boykin
Chairman
Texas Industrial Accident Board
P. O. Box 12757, Capitol Station
Austin, Texas   78711

Opinion No. H-902

Re:   Second Injury Fund replenishment.

Dear Mr. Boykin:

You have asked:

> [When should] this Board . . . stop requiring payments into the Second Injury Fund, or more specifically, what is meant by the phrase 'existing liabilities' as used in Article 8306, Section 12c-2(b).

The legal history of the Second Injury Fund, a creation of the Workmen's Compensation Law, is recounted in Texas Employers' Ins. Ass'n v. Haunschild, 527 S.W.2d 270 (Tex. Civ. App. -- Amarillo 1975, writ ref'd n.r.e.).  Generally, sections 12c and 12c-1 of article 8306, V.T.C.S., provide that when an employee who has previously suffered a compensable injury is reinjured and the second injury combines with the first to produce a greater incapacity than the second injury alone would have caused, the employer is liable for the entire resulting incapacity.

But the employer can recover from the Second Injury Fund the extra amount he has to pay as a result of combining the losses of capacity if the previous injury was of a specific type and if the combined effects of the two injuries totally and permanently disabled the employee.  See Houston General Ins. Co. v. Teague, 531 S.W.2d 457 (Tex. Civ. App. -- Waco 1975, writ ref'd n.r.e.).

Section 12c-2 of the statute reads:

> The special fund known as the 'Second Injury Fund' shall be created in the following manner:
>
> (a) In every case of the death of an employee under this Act where there is no person entitled to compensation surviving said employee, the association shall pay to the Industrial Accident Board the full death benefits, but not to exceed 360 weeks of compensation . . . to be deposited with the Treasurer of the State for the benefit of said Fund and the Board shall direct the distribution thereof.
>
> (b) When the total amount of all such payments into the Fund, together with the accumulated interest thereon, equals or exceeds Two Hundred Fifty Thousand Dollars ($250,000) in excess of existing liabilities, no further payments shall be required to be paid to said Fund; but whenever thereafter the amount of such Fund shall be reduced below One Hundred Twenty-Five Thousand Dollars ($125,000) by reason of payments from such Fund, the payments to such Fund shall be resumed forthwith, and shall continue until such Fund again amounts to Two Hundred Fifty Thousand Dollars ($250,000) including accumulated interest thereon.  (Emphasis added).

In construing the provisions of the Second Injury Fund Act, that interpretation will be employed which is most beneficial to injured employees and which will best promote the purposes of the Act.  Industrial Accident Board v. Parker, 348 S.W.2d 188 (Tex. Civ. App. -- Texarkana 1960, writ ref'd n.r.e.).  The purpose of the Legislature in setting up the Second Injury Fund Act was to compensate the injured employee for the total and permanent incapacity he has actually suffered without sacrificing the policy of encouraging the employment of physically handicapped workers.  Miears v. Industrial Accident Board, 232 S.W.2d 671 (Tex. Sup. 1950). The Supreme Court explained:

> The employer's insurer remains liable only
> for the compensation payable for the second
> injury considered alone; the remainder of
> the compensation is paid out of the fund
> which is made up of sums which, except for
> this statute, would be windfalls to insurers
> in other cases.  Id. at 675-76.

You report that on a particular date late last year a payment to the Second Injury Fund caused the balance in the fund to exceed $250,000, but the fund at that time was obligated on a long term basis to make direct payments to an injured worker on behalf of his employer in one case, and there were three pending claims against the fund for reimbursement, the subsequent payment of which reduced the fund below the $250,000 mark.  Additionally, there were at that time eight other claims against the fund which the Board had denied but which were on appeal to the courts and which would substantially reduce the balance in the fund if they were ordered paid by the courts.  Also, you advise, there were, perhaps, twenty or thirty potential claims against the fund in existence on that date which had not yet been reported, the payment of which would substantially reduce the fund balance if allowed.

We believe the Supreme Court of Texas would construe the term "existing liabilities" as used in section 12c-2 to mean those liabilities known or reasonably anticipated to exist and not merely those previously and finally determined payable.  A contrary interpretation would endanger the capacity of the Second Injury Fund to respond when its liabilities are finally determined and would produce an unintended windfall for otherwise liable insurers.  Cf. Bd. of Ins. Commissioners v. Texas Employers' Ins. Ass'n, 192 S.W.2d 149 (Tex. Sup. 1946).

The Second Injury Fund responds in a manner similar to that of an excess insurance carrier and unless its legitimate reserves for probable losses are considered liabilities which reduce its available current assets, its fiscal strength will be overstated and subject to unexpected and imprudent depletion.  See V.T.C.S., Ins. Code § 21.39; V.T.C.S. art. 8308, § 23.  We do not believe the Texas Legislature intended such a result.

A somewhat similar provision requires the Employers Insurance Association to suspend assessments against its members when at the end of a calendar year it has accumulated "an admitted surplus in excess of incurred losses, expenses and unearned premiums or other liabilities amounting to the sum of . . . ($200,000) or more . . . ."  V.T.C.S. art. 8308, § 16a.  In Texas Employers Ins. Ass'n v. Humble Oil Co., 103 S.W.2d 818 (Tex. Civ. App. -- Galveston 1937, writ ref'd), Humble argued that the Association had no legal authority to reduce the surplus distributable to subscribers by maintaining a reserve against anticipated costs, but the Court disagreed, saying that in doing so the directors of the Association did not abuse their discretion.

In our opinion, the Industrial Accident Board should stop requiring payments into the Second Injury Fund when the amount in the fund, exclusive of reserves for known or reasonably anticipated liabilities, exceeds $250,000.

### S U M M A R Y

The Industrial Accident Board should stop requiring payments into the Second Injury Fund when the amount in the fund, exclusive of reserves for known or reasonably anticipated liabilities, exceeds $250,000.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb