Walter **JOHNSON** et ux, Petitioners,

v.

The **SECOND INJURY FUND** of the State of Texas, Respondent.

No. C–3617.

Supreme Court of Texas.

April 10, 1985.

Bean, Francis, Wills and Street, Dan Street, Dallas, Tex., for petitioner.

Jim Mattox, Atty. Gen., Philip Durst, Asst. Atty. Gen., Austin, Tex., for respondent.

ROBERTSON, Justice.

The question presented for review is whether the Second Injury Fund is subro-

gated to the rights of Walter Johnson in his personal injury suit against a third party. The trial court denied subrogation. The court of appeals reversed and remanded, with one judge dissenting. 678 S.W.2d 225. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

In the course of his employment, Walter Johnson suffered an injury resulting in the loss of vision in his left eye. He had previously lost the vision in his right eye. The cumulative effect of the two injuries thus left him totally and permanently disabled. He received benefits from Texas Employer's Insurance Association and the Second Injury Fund.

Johnson and his wife then sued Texas Industries, Inc., alleging that Texas Industries had negligently caused the loss of vision in his left eye. TEIA and the Second Injury Fund intervened, alleging that they were subrogated to the rights of the Johnsons in their suit against Texas Industries. Texas Industries agreed to a cash settlement and an annuity for the Johnsons. Texas Industries also agreed to reimburse TEIA for the benefits it had paid to Johnson. The agreed judgment did not, however, settle the Fund's claim to subrogation.

The Second Injury Fund in this cause seeks to establish a right of subrogation in order to increase monies flowing into that fund. The court of appeals held that a subrogation right exists, placing primary reliance on the decisions of *Industrial Accident Bd. v. Parker*, 348 S.W.2d 188 (Tex. Civ.App.—Texarkana 1960, writ ref'd n.r. e.), and this court's decision in *Industrial Accident Bd. v. Guidry*, 162 Tex. 160, 345 S.W.2d 509 (1961). The gist of the lower court's holding was that since the portion of the workers' compensation statutes creating the Second Injury Fund is silent on the question of subrogation, the statute should be read *in pari materia* with the remaining compensation statutes, with the result that the Second Injury Fund becomes an "insurance company" or "associa-

tion," with an accompanying statutory right to subrogation.

The *Guidry* and *Parker* decisions are inapplicable for at least two reasons. First, unlike the requirements of notice and appeal dealt with in *Guidry* and *Parker*, the instant cause addresses the issue of subrogation, a historically limited right in Texas workers' compensation law. Texas courts construing the workers' compensation statutes have held that subrogation is entirely a creature of the legislature, and that the right does not exist except when clearly mandated by the legislature. *See, e.g., Fidelity Union Casualty Co., et al. v. Texas Power & Light Co.*, 35 S.W.2d 782 (Tex.Civ.App.—Dallas 1931, writ ref'd); *Aetna Life Ins. Co. v. Otis Elevator Co.*, 204 S.W. 376 (Tex.Civ.App.—1918, writ ref'd). The legislature has not explicitly created any right of subrogation for the Second Injury Fund, yet the court of appeals created one by implication.

Second, the *Guidry* court placed primary and repeated reliance upon the fact that the Second Injury Fund statute was silent on the question of notice. The statute, however, is by no means silent on the question of how monies shall be obtained for operation of the Fund. Tex.Rev.Civ.Stat. Ann. art. 8306 § 12c–2 (Vernon Supp.1985) provides, in relevant part:

"The special fund known as the 'Second Injury Fund' *shall be created in the following manner:*

(a) In every case of the death of an employee under this Act where there is no person entitled to compensation surviving said employee, the association shall pay to the Industrial Accident Board the full death benefits, but not to exceed 360 weeks of compensation ... to be deposited with the Treasurer of the State for the benefit of said Fund and the Board shall direct the distribution thereof."

(Emphasis added.)

The legal maxim *Expressio unius est exclusio alterius* is an accepted rule of statutory construction in this state. In *State v. Mauritz-Wells Co.*, 141 Tex. 634,

175 S.W.2d 238 (1943), this court held that "it is a settled rule that the express mention or enumeration of one person, thing, consequence or class is equivalent to an express exclusion of all others." 175 S.W.2d at 241. Similarly, as was recognized in *Bryan v. Sundberg,* 5 Tex. 418, 422–23 (1849):

> "[W]hen the Legislature have undertaken to enumerate what shall be received, the enumeration must, we think, be taken to include all that was intended, and consequently to exclude all that is not included in the enumeration .... 'And where a statute limits a thing to be done in a particular form it includes in itself a negative, viz, that it shall not be done otherwise.' "

*See also Harris County v. Crooker,* 112 Tex. 450, 248 S.W. 652 (1923). Thus, since the statute clearly mandates that the Second Injury Fund shall be funded only by the collection of unclaimed death benefits, it would be inappropriate for this court to add a second method not countenanced by statute—that the Second Injury Fund can collect a portion of a tort recovery from a living but totally disabled worker.

Moreover, the legislature has a clear history of diligence and vigilance in controlling the amount of money in the Second Injury Fund, and the means by which that money shall enter the Fund. Since enactment of the Second Injury Fund in 1947, section 12c–2 has been amended four times, each time with the clear intent of increasing the total amount of money available to the Fund. *See* Acts 1983, 68th Leg., Ch. 994 § 1; Acts 1979, 66th Leg., Ch. 639 § 1; Acts 1971, 62nd Leg., Ch. 316 § 3; Acts 1969, 61st Leg., Ch. 18 § 8. The legislature could, at any time, have provided an alternative funding source for the Second Injury Fund, through the mechanism of subrogation, but chose not to do so. Other means of funding have indeed been implemented in some states. *See* 2 A. Larson, *The Law of Workmen's Compensation* § 59.31(b) (1983). Yet, although the relevant portion of the statute has been amended several times, the Texas Legislature has declined to add additional funding mechanisms, such as subrogation.

The court of appeals relied upon the conclusion in *Industrial Accident Bd. v. Parker* that the Second Injury Fund is generally viewed as an "insurance company" for purposes of construing the compensation statutes. That decision, however, contains a caveat:

> "It is the legislative intention that the Second Injury Fund stand as the compensation insurer in Second Injury cases *so far as a just and harmonious interpretation of the numerous provisions of the compensation law will permit.* However, this does not mean that a substitution was intended ... *where to substitute would result in a conflict or hiatus in provisions,* or a nullification of the purposes of the Compensation Law."

348 S.W.2d at 192 (emphasis added). In the case at bar considering the Second Injury Fund to be an insurance company would create both disharmony and hiatus by reading an implied source of funding into the statute, where none exists.

The Texas Legislature has mandated the method by which the Second Injury Fund shall be financed. We are urged to consider the benefits of creating an additional source of funding, so that at some future time the Second Injury Fund is not depleted. This court has previously declined to recognize a right of action against the Fund when that right was not spelled out by statute; it would be equally inappropriate now to imply such a right in favor of the Fund. *See Second Injury Fund v. Keaton,* 162 Tex. 250, 345 S.W.2d 711 (1961).

The judgment of the court of appeals is reversed, and that of the trial court is affirmed.

HILL, C.J., files a dissenting opinion in which CAMPBELL and GONZALEZ, JJ., join.

HILL, Chief Justice, dissenting.

I respectfully dissent. The constraints of stare decisis prevent my joining the ma-

jority. The outcome of this case is controlled by a prior decision of this court, *Industrial Accident Board v. Guidry*, 162 Tex. 160, 345 S.W.2d 509 (1961). In that case this court forthrightly stated:

> By placing the Second Injury Fund Sections, supra, into the Workmen's Compensation Act and by remaining silent as to the manner in which a claim against the Second Injury Fund is to be perfected and considered, the legislature undoubtedly intended that the established procedure of administrative disposition by the Board, and *all* pertinent provisions of the Act for that matter, be equally applicable to a claim against the Second Injury Fund as they are applicable to claims against insurance carriers. A proceeding by a claimant against the Second Injury Fund does not differ materially from a proceeding by a claimant against the insurance carrier.

*Id.* at 512 [Emphasis theirs]. *See also State v. Bleeker*, 348 S.W.2d 639 (Tex.Civ. App.—Eastland 1961, writ ref'd). The majority's reliance on *Industrial Accident Board v. Parker*, 348 S.W.2d 188 (Tex.Civ. App.—Texarkana 1960, writ ref'd n.r.e.), for the proposition that a caveat to the in pari materia reading of the Workers' Compensation Act exists is misplaced. *Parker*, decided a year before *Guidry*, is a court of appeals opinion dealing with the same question as *Guidry* which contained no caveat. When this court writes on any issue, its opinion and not a court of appeals opinion represents the law of the state.

The Workers' Compensation Act provides that the "association shall be subrogated to the rights of the injured employee" when the employee claims compensation benefits and additionally pursues an action against a third party. TEX.REV.CIV.STAT.ANN. art. 8307, § 6a (Vernon Supp.1985). "Association" is defined as "Texas Employers' Insurance Association or other insurance company authorized under this Act to insure the payment of compensation to injured employees or to the beneficiaries of deceased employees." *Id.* at 8309, § 1 (Vernon 1967). In construing the Workers' Compensation Act in pari materia, as we

must, and in light of our decision in *Industrial Accident Board v. Guidry*, I would hold that the legislature intended that the Fund be entitled to the same statutory subrogation rights as private insurance carriers. In a subrogation proceeding, the Fund acts in the capacity of an insurance carrier; it "is entitled to the same protection and privileges which the legislature has given insurance carriers." *Guidry*. *See also* COUCH ON INSURANCE 2d (Rev. ed.) § 61:418 (1983) (subrogation right extends beyond insurance carrier to any agency which makes payment to the injured employee).

The majority attempts to distinguish this case from the *Guidry* line by its conclusion that the Second Injury Fund provisions of the Workers' Compensation Act are silent on notice and filing requirements while the statute specifically provides for the Fund's method of funding. The majority embarks on a tortuous path in pursuing this misperceived distinction and in treating this as a funding case instead of a subrogation case. This novel approach avoids the only true issue in the case: whether the Fund is entitled to the privileges of subrogation as set out in the Workers' Compensation statute. This case is simply not a funding case, it is a "compensation *recoupment* suit." *Myers v. Thomas*, 143 Tex. 503, 186 S.W.2d 811, 812 (1945) (emphasis added). *Guidry* did not hold that *all* provisions except those effecting funding be equally applicable to a claim against the Second Injury Fund. The *Guidry* court italicized *all* to underscore and emphasize its holding that each and every pertinent provision of the Workers' Compensation Act was to be equally applicable to a claim against the Second Injury Fund.

Funding of the Second Injury Fund involves the influx of new monies into the Fund's operating revenue by statutory mandate. In our state, as in most, this is achieved by requiring insurance carriers to deposit unpaid death benefits into the Second Injury Fund. TEX.REV.CIV.STAT. ANN. art. 8306 § 12c-2 (Vernon Supp. 1985). Other states maintain their Second

Injury Funds by special appropriations or a small percentage assessment against insurance carriers. *See* Larson, *The Law of Workman's Compensation* § 59.31(b) (1983). In contrast, however, subrogation involves a regenerative process; old monies are recycled through the system when an injured worker, such as Johnson, recovers from a third party tortfeasor. The majority's "funding" analysis is but a straw man.

The Second Injury Fund provisions, including the funding provision, were engrafted onto the Workers' Compensation Act which contained a statutory right of subrogation. With a workable statutory framework in place to compensate injured employees, it would have been ludicrous to have required the legislature to specifically insert each cog of that framework into the Second Injury Fund provisions when they were added to the Workers' Compensation Act. This court refused to adopt that type of statutory construction in *Guidry,* and we should reject it here.

The majority opinion also ignores the history and purpose of the Second Injury Fund. Originally, the Workers' Compensation Act allowed an employee, rendered totally and permanently disabled by successive injuries, recovery from the insurance carrier for the second injury *only;* he was denied any recovery for total and permanent disability. Acts 1917, 35th Leg., p. 269. The purpose of limiting recovery to the second injury was to encourage the employment of the physically handicapped by keeping premiums down. *Miears v. Industrial Accident Board,* 149 Tex. 270, 232 S.W.2d 671, 672 (1950); *Gilmore v. Lumberman's Reciprocal Ass'n,* 292 S.W. 204, 206 (Comm'n App., judgm't adopted 1927); *see also* Larson at § 59.31(a).

Thirty years later, the legislature amended the Act to create the Second Injury Fund to compensate previously handicapped workers for the difference between recovery for the second injury, which is the carrier's obligation, and recovery for permanent and total disability. Acts 1947, 50th Leg., p. 690, ch. 349, § 1. This Fund was created "to facilitate the employment of handicapped persons including a large number of returning veterans through the establishment of a Special Fund out of which such persons may be compensated when they sustain a subsequent injury." *Id.* at § 2.

In *Miears v. Industrial Accident Board,* at 673, this court said:

In spite of the soundness of the reasoning behind the provisions of Section 12c, it is obvious that in cases to which it applied before the 1947 amendment the employee who was totally and permanently disabled as a result of the combined effect of successive injuries received less compensation than would otherwise be awarded for total and permanent disability. *As a means of obviating the inequality of treatment resulting from such statutes, it was urged that "second-injury funds" should be created* out of which additional compensation could be paid to such employees. [Emphasis added.]

There is no indication that the legislature intended to give workers who become totally and permanently disabled by successive injuries more benefits than workers who are totally and permanently disabled by a single injury. The overwhelming indication is to the contrary, that is the legislature intended to put previously handicapped workers on *equal* footing with workers who had no prior disability.

Far from creating consonance in the Act, the majority's opinion will result in "disharmony and hiatus." It will allow the worker who becomes totally and permanently disabled as a result of successive injuries to retain the amount he receives from the Second Injury Fund even when he recovers from a third-party tortfeasor. But, this same worker will have to reimburse the insurance carrier for the payment the carrier has made to him for the second injury. Moreover, the worker who becomes totally and permanently disabled as a result of a single injury will have to reimburse the insurance carrier for *all* of the payments made to him.

Under the result I would reach, Johnson would have to reimburse the Second Injury Fund for the $30,499.43 it paid to him, just as he would if he had received this money from a private insurance carrier. Johnson, however, would be left with his settlement with Texas Industries which gave him $162,500 in cash plus an annuity of $750 per month for life and required Texas Industries to reimburse the Texas Employer's Insurance Association for the benefits it had paid to Johnson for the second injury.

In this case the law is plain and unambiguous; insurance carriers are given the right to subrogation and, in light of *Guidry* and the history and purpose of the Fund, and a reasonable reading of the statute as a whole, the right extends to the Second Injury Fund. Any other result frustrates the legislative purpose, and I, therefore, respectfully dissent.

CAMPBELL and GONZALEZ, JJ., join in this dissent.