SECOND INJURY FUND OF
TEXAS, Appellant,

v.

George GARCIA, Jr., Appellee.

No. 07–97–0022–CV.

Court of Appeals of Texas,
Amarillo.

May 27, 1998.

Rehearing Overruled June 24, 1998.

Attorney General of Texas (Dan Morales, Jorge Vega, Laquita A. Hamilton, Nelly Herrera, Steven Snelson, Joseph A. Pitner), Austin, for appellant.

Law Offices of Rick Keffler (Rick Keffler), Amarillo, for appellee.

Before DODSON, QUINN and REAVIS, JJ.

QUINN, Justice.

The Second Injury Fund of Texas (SIF) appeals from a judgment awarding George Garcia, Jr. (Garcia) a lump-sum recovery for benefits due him. Through five points of error, it contends that the trial court erred in 1) awarding benefits from the fund because Garcia suffered a general as opposed to specific injury, 2) entering judgment against the fund because Garcia was found not to be totally and permanently incapacitated, 3) disregarding the jury finding that Garcia was not totally and permanently incapacitated, 4) entering judgment against the fund for lifetime benefits, 5) entering a judgment providing for lump-sum benefits, and 6) admitting into evidence the deposition testimony of an expert witness who allegedly was not identified in responses to interrogatories. We affirm.

### Background

Garcia sued Cigna Insurance Company (Cigna) and SIF to recover compensation benefits. While the claims against Cigna were settled prior to trial, those involving SIF proceeded to trial. There, Garcia contended that he had suffered total and permanent incapacity due to the combined effects of losing a hand while young and losing the use of a foot in a subsequent employment related injury. After it heard the evidence of the parties, a jury found that he had indeed suffered an injury to his left foot and that the injury caused him to totally and permanently lose the use of that foot.[1] Nevertheless, he was not found totally incapacitated. Rather, the jurors believed the injury to be partially incapacitating. Garcia then moved the court to disregard this latter finding. The motion was granted, and the court held, as a matter of law, that he was totally and permanently incapacitated. So too did it award him the lump-sum payment of 412 weeks of benefits. The present value of those benefits, according to the court, equaled $61,540.

### Point of Error One

■ Under point one, the SIF alleged that the injury suffered by Garcia was general as opposed to specific. Since statute limits the liability of the SIF to compensation only for specific injuries, it continued, then recovery was improper. We overrule the point.

The Workers' Compensation Act underwent modification and codification over the last decade. However, the version of the law governing the circumstances at bar was that once found under article 8306 of the Texas Revised Civil Statutes.[2] And since the SIF was sued, we must turn to sections 12c and 12c–1 of that article for they control the liability of the second injury fund. Section 12c provided that:

> [i]f an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association (Texas Employers' Insurance Association) shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured em-

---

1. It was undisputed that Garcia had previously suffered the loss of his hand.

2. The Texas Workers' Compensation Act now appears at section 401.001, *et seq.* of the Texas Labor Code.

ployee had there been no previous injury; provided that there shall be created a fund known as the 'Second–Injury Fund' ... from which an employee who has suffered a subsequent injury shall be compensated for the combined incapacities resulting from both injuries.

Section 12c–1 further delineated the obligation of the SIF by stating that:

[i]f an employee who has previously lost, or lost the use of, one hand, one arm, one foot, one leg, or one eye, becomes permanently and totally incapacitated through the loss or loss of use of another member or organ, the association shall be liable only for the compensation payable for such second injury provided, however, that in addition to such compensation and after the combination of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for the total permanent incapacity out of the special fund known as 'Second–Injury Fund,' hereafter defined.

TEX.REV.CIV. STAT. ANN. art. 8306, §§ 12c & 12c–1 (Vernon 1967).

Upon combining the two, it was determined that several things must occur to trigger the fund's liability. First, the claimant had to have suffered the prior loss of or loss of use of a hand, arm, foot, leg, or eye. Second, the subsequent injury referred to had to involve a specific member or organ of the body. Finally, the combined effect of the two injuries had to have resulted in the claimant's total and permanent incapacity. *Second Injury Fund v. Keaton,* 162 Tex. 250, 345 S.W.2d 711, 714 (1961).[3]

■ Here, the jury found that Garcia suffered an injury "to his left foot at or above the ankle." Moreover, no one disputed that prior to incurring that malady, he had lost his right hand. Given this, one could reasonably conclude that Garcia had suffered the type of injuries contemplated under both sections 12c and 12c–1. But, not so the SIF. It contended that the injury to his foot was general and tried to prove this via two avenues. First, it posited that the doctrines of

elected remedies and collateral estoppel prevented him from asserting that his injury was anything other than general. Yet, neither doctrine was affirmatively pled by the SIF below. Such was a prerequisite. TEX.R. CIV. P. 94; *Medina v. Herrera,* 927 S.W.2d 597, 600 (Tex.1996); *Petta v. Rivera,* 923 S.W.2d 678, 687 (Tex.App.—Corpus Christi 1996, writ denied). Thus, both have been waived.

Next, the SIF tried to avoid liability by arguing that Garcia's injury was simply general. This too do we reject since 1) the jury expressly found that the injury was to his foot, 2) the SIF nowhere attempted to attack this finding, and 3) the SIF admitted that "[s]pecific injuries include[d] injuries to arms, legs, *feet,* and hands." (emphasis added).

### Point of Error Two

■ Under point two, the SIF argued that it was not liable since 1) the jury found that Garcia was partially incapacitated, and 2) the court impermissibly disregarded the finding. We again disagree and overrule the point.

To trigger the SIF's liability, the combination of the two injuries must have resulted in the claimant's total and permanent incapacity. *Second Injury Fund v. Keaton,* 345 S.W.2d at 714. Moreover, the jury at bar determined that Garcia's injury merely resulted in his partial incapacity. Thus, at first blush, it appeared that Garcia had not satisfied the criteria of sections 12c and 12c–1. Yet, the trial court disregarded the finding of partial incapacity. And it did so pursuant to Garcia's argument that under article 8306, section 11a of the Revised Civil Statutes, the loss or loss of use of one hand and one foot constituted total and permanent incapacity as a matter of law. That section provided:

In cases of the following injuries, the incapacity shall conclusively be held to be total and permanent, to-wit:

(1) The total and permanent loss of the sight of both eyes.

(2) The loss of both feet at or above the ankle.

---

3. The SIF conceded in its brief that the requirement of an injury to a specific member or organ

could have been satisfied by proof of "injuries to arms, legs, feet, and hands."

(3) The loss of both hands at or above the wrist.

(4) A similar loss of one hand and one foot.

(5) An injury to the spine resulting in permanent and complete paralysis of both arms or both legs or of one arm and one leg.

(6) An injury to the skull resulting in incurable insanity or imbecility.

In any of the above enumerated cases it shall be considered that the total loss of the use of a member shall be equivalent to and draw the same compensation during the time of such total loss of the use thereof as for the total and permanent loss of such member.

The above enumeration is not to be taken as exclusive but in all other cases the burden of proof shall be on the claimant to prove that his injuries have resulted in permanent, total incapacity.

TEX.REV.CIV. STAT. ANN. art. 8306, § 11a (Vernon 1967).[4] So given the dictate of section 11a and the fact that Garcia had lost a hand and the use of a foot, the court had no choice but to disregard the finding and conclude that he suffered total and permanent incapacity.

Yet, the SIF would have us deem section 11a inapplicable. This is so because the two provisions establishing the "sole method of determining whether or not the Fund can be held liable," that is, sections 12c and 12c–1, said nothing of section 11a or its mandatory presumption. Thus, section 11a could not affect the fund's liability. With this proposition, we disagree.

In making the foregoing argument, the SIF ignored various controlling precedent. The first involved that espoused in *Second Injury Fund v. Keaton* and *Indus. Accident Bd. v. Guidry*, 162 Tex. 160, 345 S.W.2d 509

(1961).[5] Both told us that the fund was an integral part of the Workers' Compensation Act. *Second Injury Fund v. Keaton*, 345 S.W.2d at 713; *accord Indus. Accident Bd. v. Guidry*, 345 S.W.2d at 512. So too were we directed in *Parker* to construe sections 12c and 12c–1 and all other provisions of the Act in a manner that allowed them to operate harmoniously. *Indus. Accident Bd. v. Parker*, 348 S.W.2d 188, 191 (Tex.Civ.App.—Texarkana 1960, writ ref'd n.r.e.). Both *Parker* and *Guidry* also told us that by creating the second injury fund without providing a detailed procedure for its operation, the legislature intended that the fund be administered in accordance with the procedures applicable to general compensation claims. *Id.* at 192; *Indus. Accident Bd. v. Guidry*, 345 S.W.2d at 512. In other words, "*all* pertinent provisions of the Act" were to be applicable to the fund just as they were "applicable to claims against insurance carriers" in general. *Id.* (emphasis in original); *see Indus. Accident Bd. v. Parker*, 348 S.W.2d at 192 (holding that the fund stands in the position of a compensation carrier except when statute dictates otherwise). Indeed, the only time that a section of the Act could be held inapplicable to the fund was when 1) the particular section expressly limited its application to entities *other than the fund* or 2) application of the provision to the fund violated some other part of the Act. *Id.*; *see, e.g., Martinez v. Second Injury Fund of Texas*, 789 S.W.2d 267 (Tex.1990) (refusing to apply notice provisions expressly applicable to the "association" to the fund since the definition of association did not include the fund); *Johnson v. Second Injury Fund*, 688 S.W.2d 107 (Tex. 1985) (holding that because the legislature enacted a provision expressly delineating how the second injury fund was to obtain its monies and that method did not include sub-

---

**4.** Although article 8306 was supplanted by article 8308 of the Texas Revised Civil Statutes, which in turn was re-codified into the Texas Labor Code, the parties again agree that the authority controlling, if any, is that found in article 8306. So that is why we continue and will continue to reference that statute.

**5.** The *Guidry* case has been cited in the subsequent supreme court cases of *Martinez v. Second Injury Fund*, 789 S.W.2d 267, 270 n. 7 (Tex.1990)

and *Johnson v. Second Injury Fund*, 688 S.W.2d 107, 108 (Tex.1985). In *Johnson*, *Guidry* was distinguished; in *Martinez* the court pointed out that the legislature, by setting forth a specific procedure for filing a claim against the Second Injury Fund, had overruled the holding in *Guidry* which related to the filing procedure. However, we note that the reasoning in *Guidry* which lays out the relationship of the Second Injury Fund to the Workers' Compensation Act remains intact.

rogation, the right of subrogation granted an insurance carrier was not available to the fund). Neither limitation appeared at bar.

Section 11a dealt with particular injuries which were conclusively deemed to be totally and permanently incapacitating. TEX.REV. CIV. STAT. ANN. art. 8306, § 11a. Nothing therein purported to limit its application to claims asserted against a particular entity. In other words, its focus lay not upon the entity responsible for paying the compensation but upon the nature of the injury suffered. Furthermore, nothing in either 12c or 12c–1 expressed that section 11a was inapplicable. Indeed, 12c and 12c–1 merely addressed the extent of the fund's liability once a claimant was found totally and permanently incapacitated. Both were silent about how liability was to be determined. Given these circumstances and the directive to apply all sections of the Workers' Compensation Act to the SIF when possible, we have no reason to read section 11a as inapplicable to claims against the SIF.[6]

■ Nor can we accept the SIF's alternative argument that the trial court somehow lacked authority to disregard the jury's finding of partial incapacity. First, trial courts have the authority to disregard immaterial findings *sua sponte*. *McDaniel v. Continental Apartments, J.V.*, 887 S.W.2d 167, 170 (Tex.App.—Dallas 1994, writ denied); *St. Paul Fire & Marine Ins. Co. v. Bjornson*, 831 S.W.2d 366, 369 (Tex.App.—Tyler 1992, no writ). Second, it is well-settled that an immaterial finding is one which involved a question which should never have been submitted to the jury or a question which was rendered immaterial by some other finding. *C. & R. Transp., Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966); *McDaniel v. Continental Apartments, J.V.*, 887 S.W.2d at 170–71; *St. Paul Fire & Marine Ins. Co. v. Bjornson*, 831 S.W.2d at 369. Here, the parties stipulated that Garcia had previously lost a hand. Furthermore, the jury found that he had also totally and permanently lost the use of a foot. The combination of these

two circumstances triggered application of section 11a. This, in turn, made it unnecessary for the fact finder to also decide whether the resulting incapacity was total. In other words, Garcia was deemed as a matter of law totally and permanently incapacitated via the operation of section 11a. So nothing was wrong with the court's decision to disregard the jury's finding on partial incapacity.

### Point of Error Three

■ In its third point, the SIF argued that the court erred in awarding Garcia lifetime benefits under article 8306, section 10(b). The latter stated that:

> If the injury is one of the six (6) enumerated in Section 11a of this article as constituting conclusive total and permanent incapacity, the association shall pay the compensation for the life of the employee, but in no other case of total and permanent incapacity shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of injury.

Act of June 18, 1981, 67th Leg., R.S., ch. 861, § 10(b), 1981 Tex. Gen. Laws 3290.

Since the section referred to the duty of the "association" to pay compensation and the meaning of "association" excluded the second injury fund as per *Second Injury Fund v. Tomon*, 853 S.W.2d 654 (Tex.App.—Houston [14th Dist.] 1993, writ denied), then the fund cannot be ordered to pay Garcia lifetime benefits, said the SIF. We disagree and overrule the point for several reasons.

First, section 10(b) dealt with the duration for which one deemed totally and permanently incapacitated under section 11a (1)-(6) was to receive compensation. Garcia was so deemed incapacitated under section 11a, as previously discussed. So section 10(b) and the right to receive lifetime benefits contained therein, encompassed his circumstances.

Second, the proposition that section 10(b) is inapplicable to the second injury fund was

---

**6.** The absence of language expressly restricting the scope of section 11a and the absence of express conflict between section 11a and section 12c and section 12c–1 distinguishes this case

from the pivotal circumstances in *Martinez* and *Johnson*. Thus, neither of those two cases control here.

expressly rejected in *State v. Mireles*, 838 S.W.2d 285 (Tex.App.—Dallas 1992, writ denied). There, the court concluded that the legislature intended for the second injury fund to "provide an employee with the maximum benefits that he or she [was] entitled to receive but unable to receive due to limitations imposed on the association's liability." *Id.* at 287. These benefits "include[d] the lifetime benefits provided for by section 10(b) of article 8306." *Id.*

Third, to the extent that *Tomon* holds section 10(b) inapplicable, we find its reasoning questionable. For instance, it held that the fund was not included in the meaning of "association" for purposes of that section. *Second Injury Fund v. Tomon*, 853 S.W.2d at 658. Thus, lifetime benefits were denied the claimant. Yet, in the same opinion, the court also denied the claimant a lump-sum payment of benefits under section 15 of article 8306 by including the fund within the definition of association.[7] *Id.* at 658–59. Interestingly, neither section 10(b) nor section 15 mentioned the fund. Both merely spoke in reference to the association. Yet, according to the *Tomon* court, the meaning of the same word can vary despite like circumstances.[8]

Furthermore, if *Tomon* were accurate and the word "association" did not encompass the second injury fund, then there would have been no way to ever quantify or liquidate the duty of the second injury fund. This was so because the provisions which created and regulated the fund, *i.e.*, sections 12c and 12c–1, merely established the criteria triggering the general duty of the fund to pay benefits. Neither described the dollar amounts payable once the duty was triggered. So to determine those amounts, one had to turn to other provisions of article 8306. If not, then sections 12c and 12c–1 were meaningless. Moreover, the provision of that article which quantified the monies due a totally incapacitated employee was section 10 and its subparts. Thus, even though section 10 speaks only of the obligation of the "association" the provision had to have also contemplated the fund.[9]

Next, *Tomon* blindly relied upon *Martinez v. Second Injury Fund, supra*, in reaching the decision it did. Yet, *Martinez* did not involve the calculation of benefits payable but rather the procedures applicable in filing claims against the fund. Given this and the fact that other sections of article 8306 had to be perused to quantify the fund's liability, as illustrated above, we cannot say with any certainty that the court in *Martinez* would have ruled as it did if the question before us were before it.

In sum, we find the *Mireles* opinion to be the better reasoned. So we choose to follow it.

### Point of Error Four

■ Next, the SIF argued that the court erred in awarding Garcia a lump-sum payment. This was allegedly so because article

---

7. Article 8306, § 15(a) stated that:

> [i]n cases where death or incapacity in any degree results from an injury, the liability of the association may be redeemed by the payment of a lump-sum by agreement of the parties thereto subject to the approval of the Industrial Accident Board. Where in the judgment of the Board manifest hardship and injury would otherwise result, the Board may compel the association to redeem the liability by payment of the award of the Board in a lump-sum, and a discount shall be allowed for present payment in accordance with Article 8306a, of the Revised Civil Statutes of 1925, as amended.

Act of June 19, 1983, 68th Leg., R.S., ch. 995, § 15(a), 1983 Tex. Gen. Laws 5391.

8. We are cognizant of the court's attempt to explain its vacillation by stating that Mr. Tomon

did not contend that the association excluded the fund *vis-a-vis* section 15. *Second Injury Fund v. Tomon*, 853 S.W.2d 654, 658 n. 2 (Tex.App.—Houston [14th Dist.] 1993, writ denied). One obvious explanation for his failure to do so could be the realization that the stance would contradict that taken *vis-a-vis* section 10(b). Simply put, to argue that the fund and association were synonymous for purposes of section 10(b), but different under section 15, would be to stamp the argument suspect. Nevertheless, the court opted to do that which Mr. Tomon apparently eschewed.

9. This result also comports with the Supreme Court's directive to supplement section 12c and section 12c–1 with the other provisions of the Workers' Compensation Act. *Indus. Accident Bd. v. Guidry*, 162 Tex. 160, 345 S.W.2d 509, 512 (1961).

8306, section 15(a) controlled when such awards could be granted.[10] Furthermore, according to the SIF, that section required a finding that the failure to award the benefits in a lump-sum would have resulted in manifest hardship and injury. And since no such finding was made here, Garcia was not entitled to a lump-sum payment. We again disagree and overrule the point for several reasons.

First, section 15 did not regulate the subject of paying lifetime benefits in a lump-sum. Rather, that matter was controlled by section 10(d) of article 8306, a provision the SIF mentioned nowhere in its argument.[11] Moreover, under section 10(d), the payment of such benefits in a lump-sum was expressly prohibited, except in one instance. And that instance did not involve the need to find hardship, as did section 15. Rather, it involved the existence of a bona fide dispute regarding the liability of the association. If such a dispute existed and the claimant was entitled to lifetime benefits under section 10(b), then the court was entitled to award them in a lump-sum. Given the wording of section 10(d), the fact that section 10(d) dealt specifically with the payment of lifetime benefits in a lump-sum, the fact that section 15

dealt with lump-sum payments in general, and the rule of statutory construction obligating us to apply the specific over the general, *Holmes v. Morales*, 924 S.W.2d 920, 923 (Tex.1996) (stating that when two sections of an act apply, and one is general and the other specific, the specific controls), we conclude that section 10(d) was controlling. And since the trial court at bar expressly found that a bona fide dispute regarding liability existed, we further conclude that it was authorized to order the SIF to pay the lifetime benefits in a lump-sum.[12]

Second, the case relied upon by the SIF to support its position, that is, *Second Injury Fund v. Tomon*, is without authority for two reasons. First, if the *Tomon* court had followed its own reasoning, it could have never applied section 15. As we discussed under point three, *Tomon* held that the fund was not included within the definition of association. So since section 15 spoke only of the *association's* duty to pay lump-sums, it could hardly follow that section 15(a) also encompassed the fund's duty to pay them. In other words, *Tomon* is inherently illogical. Second, nowhere did the *Tomon* court consider the application of section 10(d) of article 8306. In other words, it ignored the

10. *See* footnote 7 for content of statute.

11. Section 10 reads:

> (a) While the incapacity for work resulting from the injury is total, the association shall pay the injured employee a weekly compensation equal to sixty-six and two-thirds per cent (66 2/3%) of his average weekly wages, but not more than the maximum weekly benefit nor less than the minimum weekly benefit set fourth in Section 29 of this article.
> (b) If the injury is one of the six (6) enumerated in Section 11a of this article as constituting conclusive total and permanent incapacity, the association shall pay the compensation for the life of the employee, but in no other case of total and permanent incapacity shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of injury. * * *
>
> (c) No attorney's fee may be allowed in a case involving lifetime benefits under Subsection (b) of this section if the association admits liability while the case is pending before the Board and makes payments. If liability is not admitted before the Board, an attorney representing the claimant is entitled to a reasonable attorney's

> fee not to exceed twenty-five per cent (25%) of the compensation recovered. The association shall deduct attorneys fees allowed by the Board or court in equal periodic payments not to exceed twenty-five per cent (25%) of the compensation payment. If compensation is being paid in periodic payments, any attorney's fee allowed by the Board or court shall be paid in periodic payments.
> (d) The lifetime benefits to the employee payable under this section may not be paid in a lump sum except in a case of bona fide dispute as to liability of the association. Any settlement of a disputed case shall be approved by the Board or court only upon an express finding that a bona fide dispute exists as to such liability.
> Act of June 18, 1981, 67th Leg., R.S., ch. 861, § 10, 1981 Tex. Gen. Laws 3290 (repealed 1989).

12. Because the award of a lump-sum payment to Garcia was appropriate, the court was also entitled to award his attorney a lump-sum payment of the his fees. *See* Tex.Rev Civ. Stat. Ann. art. 8306, § 10(c), Act of June 18, 1981, 67th Leg., R.S., ch. 861, § 10(c), 1981 Tex. Gen. Laws 3290 (stating that attorney's fees must be awarded in periodic payments if the compensation due his client was payable in periodic payments).

statute which specifically addressed the lump-sum payment of lifetime benefits and instead chose to rely upon section 15.

Third, we also find the other case cited by the SIF, *Texas Ins. Ass'n v. Motley,* 491 S.W.2d 395 (Tex.1973), inapposite. There, like in *Tomon,* nothing was said of section 10(d). The obvious reason for this was the fact that section 10(d) had yet to be enacted. Thus, we cannot hold *Motley* dispositive of circumstances later controlled by section 10(d).

### *Point of Error Five*

■ In its final point of error, the SIF objected to the trial court's decision to permit Dr. Neil Veggeberg to testify on behalf of Garcia as an expert witness. Allegedly, this was error because Garcia failed to properly identify Veggeberg as an expert in answer to one of the SIF's interrogatories. We overrule the point.

■ In resolving discovery disputes, the trial court is vested with discretion. That is, we cannot interfere with its determination unless we find it to be arbitrary or unreasonable in light of all the circumstances of the particular case. *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 442–43 (Tex.1984). Moreover, an abuse of discretion arises when the court acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Next, the rule or principle which governed the court's decision at bar was that requiring a litigant to answer interrogatories "fully in writing." Tex.R. Civ. P. 168. And whether they are so answered "must be decided on a case by case basis." *Alexander v. Barlow,* 671 S.W.2d 531, 533 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

Here, the SIF served Garcia with various interrogatories. Number fifteen asked him to "[s]tate the name and addresses and specialties of all expert witnesses whom you ... expect to call to testify at trial...." To it, Garcia answered:

1. With regard to physical abilities required to do Claimant's past and future jobs, all of the witnesses listed in answer to Interrogatory No. 14 have some familiarity with these jobs [sic] may be expert witnesses. All of the witnesses are familiar with various jobs and may testify regarding their opinion of Claimant's ability to do these jobs.

2. Other experts will be the health care providers. See medical records for addresses and specialties.

Furthermore, one category of witnesses mentioned in Garcia's response to interrogatory 14 was "all health care providers and their records custodians." Additionally, in answer to interrogatory nine which sought information about the individuals who provided him with medical care, Garcia specifically named Dr. Neil Veggeberg. So too did he inform the SIF, through the answer, that the doctor's address and area of practice could be secured from the medical records that had been or were in the process of being provided. Finally, those records (which were included in the appellate record) not only contained the doctor's address but also the matters for which he treated Garcia. Given these circumstances, the trial court ruled that Veggeberg was sufficiently identified, though it conceded that "a more thorough answer would have been of assistance."

Like the trial court, we too conclude that Garcia provided the SIF with the information requested via interrogatory 15. Admittedly, the means by which he did was somewhat circuitous. Yet, the SIF did not seek clarification of the answer. Instead, it deposed Veggeberg. Under these circumstances, we cannot say that the trial court abused its discretion in holding that the doctor was sufficiently identified, though "a more thorough answer would have been of assistance."

Accordingly, we affirm the judgment entered below.