Reversed and Rendered and Opinion filed February 7, 2006









Reversed and Rendered and Opinion
filed February 7, 2006.

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00081-CV

_______________

 

FIRE INSURANCE EXCHANGE, Appellant

 

V.

 

CLIFTON SULLIVAN AND DIANE
SULLIVAN, Appellees

________________________________________________________

 

On Appeal from the County Court at Law No. 3

Brazoria County, Texas

Trial Court Cause No. C1029521

________________________________________________________

 

O
P I N I O N








An insurer under a homeowner=s policy appeals from a money
judgment in favor of the insureds based on their claims for breach of contract,
violations of the Deceptive Trade Practices Act and former article 21.55 of the
Texas Insurance Code.[1]  We conclude that, after properly applying the
jury=s findings, the amount that the
insurer tendered to the insureds before suit exceeds the amount to which the
insureds are entitled under the jury=s verdict.  Accordingly, we reverse the trial court=s judgment and render judgment that
the insureds take nothing against the insurer.

I. 
Factual and Procedural Background 

Appellant Fire Insurance Exchange (AFIE@) insured the home of Clifton and
Diane Sullivan[2]
under a standard Texas Homeowner=s Policy, Form B.[3]  In late May or early June of 2001, a pipe in
the attic of the Sullivans= home burst.  Clifton
Sullivan repaired the pipe and vacuumed the water out of the living room
carpet. On July 2, Diane Sullivan reported the leak to her insurance agent,
Dwight Moody, and also informed him of a second leak, located in the master
bath shower.  

After inspecting the home, FIE=s adjuster, John Dunn, estimated
repairs attributable to the attic leak would cost $2,944.75.  He subtracted the Sullivans $880 deductible
from this amount, resulting in a net payment of $2,064.75.[4]  Concerned they may not be able to complete
the repairs for that amount, Diane Sullivan contacted Moody, and he advised her
to get a second estimate.  The contractor
she subsequently contacted estimated the repairs at $7,290.  The Sullivans contend that they did not have
the additional $5,000 for the repairs and therefore hired an attorney.  








On July 31, 2001, the Sullivans= attorney sent a written claim to FIE
for mold growth and water damage. In September 2001, claiming they did not
receive a satisfactory response to their written claim, the Sullivans hired a
contractor to investigate the damage and the following additional leaks were
discovered: an air conditioner leak, a leak in the master shower, and one in
the hall bath.  The Sullivans reported
those additional losses to FIE on September 4 and September 7.  The contractor advised the Sullivans to leave
the house because it was contaminated with mold, and they relocated to a motel
on September 8, 2001. 

On September 12, FIE assigned another claims adjuster,
Richard Norwood, to handle the Sullivans= claims.  Norwood initiated payment of additional
living expenses (AALE@) for the Sullivans and requested additional testing on the
residence.  That testing was done on
January 3, 2002.  According to the test
results, there was mold growth in virtually the entire house.  Norwood=s investigation of the claims
concluded on March 6, 2002, and on April 3, FIE issued two checks to the
Sullivans one for $66,734.02 and one for $15,696.55.[5]

Unsatisfied with these amounts, the Sullivans sued FIE
alleging that the delay and mishandling of their claims had resulted in the
deterioration of their home.  They
asserted claims for breach of contract, bad faith, violations of the Insurance
Code and the Deceptive Trade Practices Act (ADTPA@).[6]  FIE responded with a general denial alleging
that the damages to the home were excluded under various policy provisions, and
that the Sullivans failed to protect the home and make necessary repairs.  

The case was tried to a jury, which found that FIE breached
the dwelling coverage portion of the policy, but not the personal property and
additional living expenses coverage provisions. 
The jury awarded costs for mold remediation and repair of the home, as
well as personal property damage.  In its
final judgment, the trial court accepted the verdict, stating as follows:








The Jury found the total amount to repair the dwelling
and to repair or replace contents to be $98,565.11.  The court finds that [FIE] tendered payment
to Plaintiffs . . . in the amount of $2,064.75 and tendered further payment to
Plaintiffs . . . in the amount of $82,430.57 entitling [FIE] to a credit
totaling $84,495.32.

Taking such into account along with the $880 deductible
set out in the policy of insurance, the Plaintiffs are entitled to recover
damages on their breech [sic] of contract and DTPA claims from [FIE] in the
amount of $13,189.79.

Plaintiffs
are further entitled to recover penalty under Art. 21.55 in the amount of
$31,450.67; Plaintiffs are further entitled to recover prejudgment interest of
$1,798.28; plaintiffs are entitled to recover reasonable attorney fees in the
amount of $39,426.04 for a total judgment in favor of Plaintiffs . . . of
$85,864.78. 

II. 
Issues Presented

FIE presents the following issues:

(1)       Whether the trial court erred in including the
personal-property costs in the judgment=s total
cost amount when the Sullivans failed to obtain findings (1) that FIE breached
the personal-property coverage portion of the policy, and (2) that their loss
was caused by a covered, named peril.

(2)       Whether the trial court erred in including the full amount of
the dwellings=s remediation and repair costs in the judgment=s total cost amount when the jury found that only
forty-five percent of these costs were attributable to a covered peril.

(3)       Whether penalty interest under former article 21.55 of the
Texas Insurance Code accrues on payments made to the insured.

(4)       Whether the Sullivans are entitled to attorney=s fees.

(5)       Whether the Sullivans= failure
to comply with the policy=s condition precedent that required them to prevent
further damage to the property precludes their recovery under the policy.

(6)       Whether the policy=s mold
exclusion precludes any recovery under the policy.

 








III. 
Analysis

A.        Policy
Provisions

Before addressing FIE=s issues and arguments, we set out
pertinent provisions of the policy and the jury=s findings.  As presented to the jury, the insurance
policy provides three distinct areas of coverage: (1) to the dwelling; (2) for
personal property; and (3) for additional living expenses.  Under the policy, the dwelling is insured
against Aall risk of physical loss . . .
unless the loss is excluded in Section I Exclusions.@ 
The Sullivans= personal property, subject to the same exclusions, is
insured against physical loss if caused only by named perils.  The named peril pertinent to this case is AAccidental Discharge, Leakage or
Overflow of Water or Steam from within a plumbing, heating or air conditioning
system or household appliance.@  Following the
accidental discharge or leakage provision is the Aexclusionary repeal provision,@ stating AExclusions 1.a. through 1.h. under
Section I Exclusions do not apply to loss caused by this peril.@ 
Of these exclusions, 1.f. is the only one relevant to our discussion and
provides:  

We do not cover loss caused by:

(1)       wear and tear, deterioration or loss caused by any quality in
property that causes it to damage or destroy itself.

(2)       rust, rot, mold or other fungi.

(3)       dampness of atmosphere, extremes of temperature.

(4)       contamination.

(5)       rats, mice, termites, moths or other insects.

We do cover ensuing loss caused by collapse of the
building or any part of the building, water damage, or breakage of glass which
is part of the building if the loss would otherwise be covered under this
policy.

The last sentence in this provision is generally referred to as the Aensuing loss@ provision.








FIE=s liability for breach of the insurance policy was
submitted to the jury in three separate questions, one pertaining to the
dwelling portion of the policy (Question 1-A), one to the personal property
portion (Question 1-B), and one concerning the additional living expenses
portion (Question 1-C).  The jury found
FIE breached only the dwelling portion of the policy, answering ANo@ to Questions 1-B and 1-C.  The instructions accompanying Question 1-A
provided:[7]


 

Payment is owed under the policy for all risks of
physical loss to the house, unless otherwise excluded.

The policy excludes coverage for loss caused by wear
and tear, deterioration, any condition of the property that causes it to damage
itself, dampness of atmosphere, extremes of temperature, rust, rot[,] mold or
other fungi.  However, these exclusions
do not apply to loss caused by accidental discharge, overflow or leakage from
within a plumbing, heating and air conditioning system or household appliance.

The policy does provide coverage for ensuing loss
caused by water damage if the loss would otherwise be covered under the policy.


 

B.        Did the trial court err in its
calculations of the damages awarded for mold remediation? 

 








There was no dispute in this case that the Sulllivans= home had been damaged.[8]  Instead, the parties= focus at trial was the cause of the
damage.  In its defense, FIE sought to
establish that the damages were due to roof leaks, a leak from an air
conditioning overflow pan, and the Sullivans= failure to make repairs to the home.
The Sullivans sought to prove that the pipe leak in the attic and the shower
were the genesis of the home=s damages and, because of FIE=s mishandling of their claims, the
home sustained the additional damages. 
To this end, both parties introduced evidence attributing the cause of
the damages to particular perils.  In its
second issue, FIE contends the trial court erred in awarding the full amount of
the mold-remediation costs found by the jury because the jury attributed only
forty -five percent of these costs to a cause covered by the policy.[9]  

In Question 2(a), the jury was asked what amount of money
should be awarded, if any, for the cost of mold remediation to the home.  The jury answered $22,302.81.  Question 3A then inquired, A[w]hat percentage, if any, of the
cost of remediation of the mold damage to the Sullivans= home that you have found in answer
to Question 2(a) to have been a producing cause of damage to the Sullivans= home do you attribute to the
following causes?@  Five perils were
listed and, in response, the jury inserted the following percentages:  1) ten percent to ADeterioration of the roof@; 2) forty-five percent to ADampness of atmosphere, extremes of
temperature@; and 3) forty-five percent to
accidental leakage or discharge. 

The trial court=s judgment must conform to the
pleadings, the nature of the evidence, and the jury=s verdict.  See Tex.
R. Civ. P. 301.  A trial court may
not enter a judgment notwithstanding the verdict or disregard jury=s findings that are supported by the
evidence, except upon motion and notice. 
Id.  Here, although the
jury attributed fifty-five percent of the cause of the mold damage to excluded
perils, the trial court awarded the Sullivans the full amount of damages
awarded in the corresponding question, 2(a), apparently disregarding the jury=s finding in Question 3A.  The Sullivans did not file a motion
requesting the trial court to disregard that finding.     








If a trial court sua sponte disregards a finding, the
court=s action may be upheld only where the
disregarded finding is immaterial.  Harris
County v. Gibbons, 150 S.W.3d 877, 885 (Tex. App.CHouston [14th Dist.] 2004, no pet.); see Second Injury Fund of Tex. v. Garcia, 970
S.W.2d 706, 710 (Tex. App.CAmarillo 1998, pet. denied); McDaniel v. Cont=l Apartments, Joint Venture, 887 S.W.2d 167, 170 (Tex. App.CDallas 1994, writ denied).  Similarly, only when an issue is material
must the judgment conform to the jury=s finding.  Brown v. Armstrong, 713 S.W.2d 725,
728 (Tex. App.CHouston [14th Dist.] 1986, writ ref=d n.r.e.).  A question is immaterial when it should not
have been submitted or, though properly submitted, it is rendered immaterial by
other findings.  Spencer v. Eagle Star
Ins. Co. of Am., 876 S.W.2d 154, 157 (Tex. 1994). 

On appeal, the Sullivans contend the trial court properly
disregarded Question 3A because it is immaterial in light of the jury=s answer to Question 1-A, asserting
the excluded perils were covered under the policy by virtue of the ensuing loss
provision or the exclusion repeal provision. 
But, the jury expressly attributed only forty-five percent of the cause
of the mold damage to accidental discharge in Question 3A.  Moreover, although ensuing loss was
referenced to in the breach question, the jury was not asked to allocate any
percentage of the mold damage to an ensuing loss.  Because the ensuing loss provision is an
exception to an exclusion, it was up to the Sullivans to request that element
be included in the causation question.[10]
 See Comsys Info. Tech. Servs., Inc.
v. Twin City Fire Ins. Co., 130 S.W.3d 181, 193 (Tex. App.CHouston [14th Dist.] 2003, pet.
denied) (stating it is the insured=s burden to demonstrate coverage
under an exception to an exclusion); cf. Walker v. Fed. Kemper Life
Assurance Co., 828 S.W.2d 442, 454 (Tex. App.CSan Antonio 1992, writ denied)
(noting insured appellant failed to request a necessary causation
element).  We cannot conclude, as
suggested by the Sullivans= argument, that by simply finding a breach, causation
findings are then rendered immaterial. 
The Sullivans had the burden to prove their damages were attributable to
a covered cause. 








Nor can we conclude that Question 3A should not have been
submitted or was otherwise immaterial. 
As we noted, the main focus of the dispute between the parties was the
cause of the damages to the home and thus, the causation question was a
controlling issue.  FIE sought to
establish that at least some of the mold damages were due to excluded perils
and presented evidence in support of its contentions.  The trial court must submit a jury question
raised by the evidence and pleadings.  Harris
County v. Smith, 96 S.W.3d 230, 236 (Tex. 2002); Brown v. Edwards
Transfer Co., 764 S.W.2d 220, 223 (Tex. 1988). 

The trial court=s judgment should have conformed to
the jury=s findings, including those in
Question 3A. The trial court erred by awarding all of the damages found by the
jury in Question 2(a), because in Question 3A not all of those damages were
found to be caused by covered perils.  In
accordance with the jury=s causation findings in answer to Question 3A, we hold that
the trial court should have reduced the Sullivans= potential recovery based on the jury=s answer to question 2(a) to
$10,036.26 (45% of $22,302.81).  To this
extent, we sustain FIE=s second issue.

C.        Did the trial court err by including
costs to replace or repair the Sullivans= personal property?  

In its first issue, FIE argues that the trial court also
erred in its damage award to the Sullivans by including the cost to clean or
replace the Sullivans= personal property because the jury failed to find that FIE
had breached that portion of the policy and failed to attribute any of those
costs to a covered peril.  Question 1-B,
the liability question and instructions regarding the personal property portion
of the policy, stated the following:

Did [FIE] breach the personal property coverage
portion of the policy of insurance?

A Abreach of contract@ to the
personal property portion of the policy occurs if:

1) Payment that is owed under the contract is not
made; or

2) Services owed under the contract are not provided;
or

3) Deadlines set by the contract are not met.

 








Payment is owed under the policy for physical loss to
the personal property caused by the following perils, unless otherwise
excluded.

A.        Windstorm

B.        [A]ccidental discharge, overflow or leakage from within a
plumbing, heating and air conditioning system or household appliance.

Loss caused by windstorm to personal property within a
building is not covered unless direct force of wind makes an opening in a roof
or wall and rain enters through this opening and causes the damage. 

The policy excludes coverage for loss caused by wear
and tear, deterioration, any condition of the property that causes it to damage
itself, dampness of atmosphere, extremes of temperature, rust, rot mold or
other fungi.  However, these exclusions
do not apply to loss caused by accidental discharge, overflow or leakage from
within a plumbing, heating and air conditioning system or household appliance.

The policy does provide coverage for
ensuing loss caused by water damage if the loss would otherwise be covered
under the policy.

To this question, the jury answered Ano.@ 









The only damage question submitted to the jury for all of the
Sullivans= claims was Question 2.[11]  That question was expressly predicated on an
affirmative response to Questions 1-A, 1-B, or 1-C.  Question 2(c) asked what sum of money would
compensate the Sullivans for A[t]he reasonable and necessary cost to replace or clean the
contents of the home?@  The jury answered
$23,696.55.  Following that, in Question
3B, the jury attributed ten percent of the cost to clean and repair the
Sullivans= personal property to ADeterioration of the roof,@ attributed ninety percent to ADampness of atmosphere, extremes of
temperature,@ but did not attribute any percent of
the cost to accidental leakage or discharge. 
In the trial court, FIE requested the trial court to disregard the jury=s answer to Question 2(c), claiming
it was rendered immaterial by the jury=s answers to Questions 1-B and
3B.  On appeal, FIE reasserts this
argument, and contends the trial court erred in not deducting $23,696.55 from
the amount of the Sullivan=s potential recovery. 
In response to FIE=s argument, the Sullivans argue that there is one contract,
the jury found it was breached, the trial court properly disregarded the jury=s answer to Question 1-B because it
was immaterial,[12]
and that submitting the breach question in three parts was contrary to Rule of
Civil Procedure 277.[13]


As we have stated, a question is immaterial when it should
not have been submitted, or when it was properly submitted but has been
rendered immaterial by other findings.  Spencer,
876 S.W.2d at 157.  Important to this
issue, without a corresponding liability finding, a finding of damages becomes
immaterial.  See Mitchell v. Bank of
Am., N.A., 156 S.W.3d 622, 627 (Tex. App.CDallas 2004, pet. denied) (AIt is well established in Texas that
no recovery is allowed unless liability has been established.  In the absence of liability, the question of
damages becomes immaterial@); Turner v. Lone Star Indus., Inc., 733 S.W.2d 242,
246 (Tex. App.CHouston [1st Dist.] 1987, writ ref=d n.r.e.). 

The insurance policy in this case is an all-risk policy as to
the dwelling.  However,  the personal property coverage is limited to
damages caused by specifically named perils, and there are a limited number of
exclusions that apply to the named perils. 
Therefore, FIE=s actions could have been a breach of the dwelling portion of
the policy without constituting a breach of the personal property portion.  Thus, each breach question pertained to
different elements of the alleged breach and was properly submitted.  See Fleet v. Fleet, 711 S.W.2d 1, 2
(Tex. 1986); see also Harris County, 96 S.W.3d at 236 (AWhether a granulated or broad‑form
charge is submitted, the trial court=s duty is to submit only those
questions, instructions, and definitions raised by the pleadings and the
evidence.@). 









In Question 1-B, the jury found FIE had not breached the
personal property portion of the policy; thus, the jury failed to find FIE was
liable under that portion of the policy. 
Further, in the corresponding causation question, Question 3B, the jury
attributed all of the Sullivans= personal property damages to excluded perils.  The Sullivans had the burden to prove that
the damages to their personal property were due to the perils named in the
policy, or as an exception to the policy=s exclusions, as stated in the
charge.  In the jury=s answers to Questions 1-B and 3B,
the jury found that the Sullivans failed to meet this burden of proof.  Without a finding of a breach of that portion
of the policy, the jury=s finding of damages on that issue became immaterial and
should have been disregarded by the trial court.  See Mitchell, 156 S.W.3d at 627; see
also Pigg v. Int=l Hosps., Inc., 421 S.W.2d 169, 172B73 (Tex. Civ. App.CDallas 1967, writ ref=d n.r.e.) (noting under Rule 301, an
immaterial issue may be disregarded even if supported by evidence).   








The Sullivans also argue that Question 1-B was rendered
immaterial because of the jury=s answers to Questions 5 and 6.  There, the jury found that FIE breached
former article 21.55 and the DTPA, respectively.  According to the Sullivans, because these
statutes provide that all sums owed under the contract may be awarded as
damages, the trial court did not err in awarding all costs to remediate the
Sullivans= personal property.  But, liability under former article 21.55 of
the Insurance Code and the DTPACas alleged by the Sullivans and found by the jury hereBBis contingent on a finding of
coverage.  See Progressive County Mut.
Ins. Co. v. Boyd, 177 S.W.3d 919, 922 (Tex. 2005) (AThere can be no liability under
[former] article 21.55 if the insurance claim is not covered by the policy@); Allstate Ins. Co. v. Bonner,
51 S.W.3d 289, 291 (Tex. 2001); see also Tex. Ins. Code Ann. art. 21.55, ' 6 (Vernon Supp. 2004) (stating
damages were to be awarded when the insurer is liable Apursuant to a policy of insurance@). 
Because the jury failed to find that FIE breached the personal property
portion of the insurance policy, and failed to attribute any cause of the
damage to a covered peril, the Sullivans cannot be entitled to the personal
property damages under former article 21.55 of the Insurance Code.  See Progressive County Mut., 177
S.W.3d at 922.

Likewise, the jury=s affirmative findings on the
Sullivans= DTPA claims were all rooted in FIE=s handling of the Sullivans= claims.  The jury did not find that FIE had
misrepresented a material fact or policy provision relating to coverage, and
failed to find that FIE represented that work or services had been performed
when in fact, they had not.  And, in
Question 9 the jury was asked if FIE failed to comply with its duty of good
faith and fair dealing, and the jury answered, ANo.@ 
See Vail v. Tex. Farm Bureau Mut. Ins. Co., 754 S.W.2d 129, 135
(Tex. 1988) (stating in order to establish statutory violations under the DTPA
and article 21.21 of the Insurance Code, the same elements necessary to establish
the insurer=s common law duty of good faith and
fair dealing need to be proven); see also Tex. Bus. & Com. Code Ann. '' 17.46, 17.50 (Vernon 2002) (listing,
respectively, deceptive acts and consumer=s remedies).  Therefore, recovery for the damages to the
Sullivans= personal property, based on the
mishandling of their claims, could not be premised on the jury=s findings in Question 6.    

Therefore, in accordance with the jury=s findings in answer to Questions 1-B
and 3B, we hold that the trial court should not have included in the Sullivans= potential recovery the $23,696.55
found by the jury in answer to question 2(c). 
Accordingly, we sustain FIE=s first issue.  In sum, under the jury=s findings, the total amount of the
Sullivan=s potential recovery and the amount
of coverage owed under the policy is $61,722.01 (which is $10,036.26 plus
$52,565.75Cthe damages found by the jury in
answer to Question 2(b)Cminus the $880 deductible). 
This amount is less than the $84,495.32 that FIE tendered to the
Sullivans before they filed suit. 
Therefore, the trial court erred in not rendering a take-nothing
judgment as to the Sullivans= breach-of-contract and DTPA claims.[14]   








D.        Did the
Trial Court Err in its Penalty Interest Damages Calculations?

In its third issue, FIE argues that the trial court erred in
its penalty interest damage calculations under former article 21.55 of the
Insurance Code because the court included interest on the entire amount of the
claim without deducting any amount of money previously paid.

Relative to this case, former article 21.55 provided: 

In all cases where a claim is made pursuant to a
policy of insurance and the insurer liable therefor is not in compliance with
the requirements of this article, such insurer shall be liable to pay the
holder of the policy, or the beneficiary making a claim under the policy, in
addition to the amount of the claim, 18 percent per annum of the amount of such
claim as damages, together with reasonable attorney fees.  If suit is filed, such attorney fees shall be
taxed as part of the costs in the case. 

 

Tex. Ins. Code Ann. art. 21.55, ' 6 (Vernon Supp. 2004).  In Republic Underwriters Insurance Co. v.
Mex-Tex, Inc., 150 S.W.3d 423, 427B28 (Tex. 2004), the supreme court
examined calculation of former article 21.55 penalty interest damages and
concluded that the amount of the Aclaim@ for purposes of that statute is the
amount ultimately determined to be owed to the claimant, less any partial
payments made.  Thus, an insured is
entitled to the penalty interest on the difference between the amount the
insurer unconditionally tendered and the amount of the claim as determined to
be owed.  Id. 








In this case, the trial court awarded penalty interest
damages to the Sullivans based on the full amount of damages found by the jury,
without any deduction for the unconditional payments made by FIE.  As FIE contends, this is error; therefore, we
sustain FIE=s third issue in this regard.  The amount of coverage owed under the policy,
based on the jury=s findings, was $61,722.01. Under Mex-Tex, the trial
court should have stopped calculating penalty interest on April 3, 2002, the
day that the amount tendered by FIE exceeded the amount of coverage.  See Mex-Tex, Inc., 150 S.W.3d at 427B28. 
The Sullivans requested penalty interest starting from January 27,
2002.  Eighteen percent per year interest
on $61,722.01 from January 27, 2002 to April 3, 2002 is $2,008.92.  Therefore, the Sullivans potential recovery
under former article 21.55 was no more than $2,008.92. 

E.        Were
the Sullivans entitled to recover attorneys= fees?

In its fourth issue, FIE asserts that the Sullivans were not
entitled to recover attorney=s fees under the DTPA and Chapter 38 of the Civil Practice
and Remedies Code because, under the jury=s findings, they should have taken
nothing on those claims, so that they were not prevailing parties.  We agree. 
As to those claims, the amount that FIE tendered the Sullivans before
suit exceeded the amount they were entitled to under the jury=s findings.  This is not an offset for a different
claim.  Because the Sullivans should have
recovered no actual damages under their DTPA and contract claims, they cannot
recover attorney=s fees as to these claims. 
See Allstate Ins. Co. v. Bonner, 51 S.W.3d 289, 291B92 (Tex. 2001) (stating that where
amount found by jury has already been paid by defendant, party has not
prevailed as to claim); Buccaneer Homes of Alabama, Inc. v. Pelis, 43
S.W.3d 586, 591 (Tex. App.CHouston [1st Dist.] 2001, no pet.) (holding party is not
entitled to attorney=s fees under DTPA if all of their damages were paid before
trial); Blizzard v. Nationwide Mut. Fire ins. Co., 756 S.W.2d 801, 806B07 (Tex. App.CDallas 1988, no writ) (same as Buccaneer
as to Chapter 38). 

FIE also asserts the parties stipulated that, if the
Sullivans are entitled to recover attorney=s fees, then their attorney=s fees would be forty percent of the
amount of the actual damages they recover. 
The record reflects the following stipulation in open court between FIE
and the Sullivans:








[counsel for FIE]:                 [FIE]
stipulates that in the event the jury enters findings on liability issues that
would entitle [the Sullivans] to an award of attorney=s fees, [the Sullivans] will be entitled to receive a
judgment for attorney=s fees of forty percent of the C of whatever the damage figure is that is entered in
the judgment for that statutory attorney [sic] fee issue... 

[trial court]:                           And this is assuming
that the appropriate answers are made to issues submitted that would open the
door for DTPA.

[counsel for FIE]:                  Sure, for liability.  If there is a liability finding, absolutely.

[counsel for theSullivans]:   I accept the stipulation. I think it=s fine.

[trial court]:                           I=ll approve the stipulation. I believe that it is
appropriate.

. . .

[counsel for Sullivans]:         Well, my only concern is that C we asked the court reporter to type it up, and the
Court=s question modifies the stipulation.  The stipulation was made by [counsel for FIE]
that they would agree to forty percent of whatever the damage figure is and
then the Court said assuming the appropriate answers are made to issues
submitted that would open the door to DTPA. 
We also have attorney=s fees in connection with breach of contract and in
connection with breach of the insurance code. 
And to C what I=d like
to clarify is the Court=s question should not be made to limit the
stipulation.

[trial court]:                           And it was not
intended to. That was probably a misspoken statement on my part.  It probably would be more appropriate that if
the appropriate responses are made across the board that would open it up for
attorney=s fees.  Is that
your understanding, [name of counsel for FIE]?








[counsel for FIE]:                  Yes, Your Honor, to the extent
that there are jury findings that would on liability issues open the door for
statutory attorney=s fees and C
yeah.  That C it=s not limited to DTPA, for example, 21.21.

[counsel for Sullivans]:         The Texas Civil Remedies &  Practice Code [sic] C what is it C 38.001
also provides attorney=s fees for contract cases, and the Texas Supreme Court
has recently held that that does apply to insurance disputes.  So, I understand your term statutory
liability to include attorney=s fees under 38 C or
38.001.

[counsel for FIE]:                  Only to the extent that
counsel establishes her entitlement under that statute and under that
provision.  My understanding is that it
requires a notice letter and demand for attorney=s fees;
but assuming that she establishes the prerequisites, yes.

[trial court]:                           My statement was in
no way intended to be a limitation.  To
put it globally, I understand that defense counsel is saying that if the
requisite steps have been taken and they are satisfied, you would then become
entitled to attorney=s fees across the board in any situation if the
requisite statutory steps are taken.

[counsel for FIE]:                  Correct.

[counsel for Sullivans]:         I
don=t have any problem with that.  








FIE asserts that, under this stipulation, the Sullivans= potential recovery for attorney=s fees under former article 21.55 is
limited to forty percent of the amount of penalty interest damages that the
Sullivans are entitled to recover.  We
agree.  The record reflects that, to
avoid the necessity of presenting evidence regarding the reasonableness of the
attorney=s fee requested by the Sullivans, the
parties stipulated that, if the Sullivans were otherwise entitled to recover
attorney=s fees under a statute, then the
reasonable fee would be forty percent of the actual damages recovered by the
Sullivans under that statute.  Based on
this stipulation, the Sullivans= potential recovery of attorney=s fees under former article 21.55 was
no more than $803.57, which is forty percent of $2,008.92.  

The Sullivans argue that the parties stipulated the Sullivans
would recover forty percent of the damages found by the jury, without deducting
the amount already paid by FIE and without giving effect to the jury=s other findings, regardless of
whether the Sullivans recovered actual damages or would otherwise have been
entitled to recover attorney=s fees.  This argument
lacks merit because it conflicts with the parties= description of the stipulation in
open court.  The parties stipulated in
open court that the Sullivans would only recover attorney=s fees if they were otherwise
entitled to do so, but that the Sullivans need not prove reasonableness because
the parties agreed that forty percent of the amount recovered by them in the
judgment would be a reasonable attorney=s fee.  Under the Sullivans= interpretation of the stipulation,
the Sullivans would be entitled to recover more than $39,000 in attorney=s fees, even if they recovered no
damages under their breach-of-contract and DTPA claims and only $2,008.92 under
former article 21.55.  This is not a
reasonable interpretation of the parties= language in describing their
stipulation.  We conclude that the
Sullivans cannot recover attorney=s fees based on their
breach-of-contract and DTPA claims and that the Sullivans= potential recovery of attorney=s fees under former article 21.55 was
no more than $803.57.   Accordingly, we
sustain FIE=s fourth issue to this extent.[15]


III. 
Conclusion








In light of the jury=s causation findings in answer to
Question 3A, the trial court should have reduced the Sullivans= potential recovery based on the jury=s answer to question 2(a) to
$10,036.26.  Because of the jury=s findings in answer to Questions 1-B
and 3B, the trial court should have not have included in the Sullivans= potential recovery the $23,696.55
found by the jury in answer to question 2(c). 
Calculating penalty interest damages under former article 21.55 in
accordance with the Mex-Tex case, the Sullivans= potential recovery for penalty
interest damages was no more than $2,008.92. 
Because FIE paid the Sullivans more than they were entitled to recover
on their breach-of-contract and DTPA claims, the Sullivans cannot recover
attorney=s fees under the DTPA or Chapter 38
of the Civil Practice and Remedies Code. 
Based on the parties= stipulation at trial, the Sullivans are entitled to recover
no more than $803.57 in attorney=s fees under former article
21.55.  Therefore, applying the jury=s findings of fact, the total
potential liability of FIE to the Sullivans was $64,534.50.  Presuming, without deciding, that there is no
merit in FIE=s arguments regarding an alleged
condition precedent and an alleged total exclusion of mold damage, the
Sullivans were not entitled to recover a judgment against FIE because FIE had
already paid the Sullivans more than $64,534.50.[16]  Accordingly, we reverse the trial court=s judgment and render judgment that the
Sullivans take nothing on their claims against FIE. 

/s/        Eva M. Guzman

Justice

 

Reversed and Rendered and Opinion filed February 7, 2006.

Panel consists of Justices Edelman, Seymore, and Guzman. 

 

 











[1]  See Act
of May 27, 1991, 72d Leg. R.S., ch. 242, ' 11.03,
art. 21.55, 119 Tex. Gen. Laws 939, 1043-45 (repealed and recodified 2003)
(current version at Tex. Ins. Code Ann.
'' 542.051B.061
(Vernon Supp. 2005).





[2]  In the record,
Mrs. Sullivan is referred to both as ADiane@ and ADiana.@  Because the
Sullivans= pleadings refer to her as ADiane,@ we refer to her in that manner as well.  





[3]  The parties do
not dispute that the policy was in effect during the time period in question. 





[4]  The master
bath leak was not addressed at that time because, according to Dunn, Diane
Sullivan did not want to pursue it.  





[5]  The Sullivans
declined to cash these checks; however, checks payable in the same amounts and
payable to the Sullivans= attorneys were later sent to the Sullivans= attorneys. 
These attorneys cashed both checks.





[6]  The Sullivans
also sought a declaratory judgment against FIE. 






[7]  Because the
jury found FIE breached only the dwelling portion of the policy, we limit our
discussion to Question 1-A.





[8]  FIE=s counsel stated during opening argument that there
was no dispute the house had become unihabitable and no dispute it was
reasonable for the Sullivans to have left the home. 





[9]  FIE=s argument in the trial court under this issue
differed slightly.  On appeal, FIE
asserts that both Questions 2(a) and 2(b), damages for the cost to remediate
and repair the home, respectively, must be reduced by fifty-five percent, but
in the trial court it requested that only Question 2(a) be reduced by the jury=s findings. 
Because Question 3A is limited solely to the jury=s finding in Question 2(a) and FIE did not request
that Question 2(b) be reduced in the trial court, we limit our discussion of
FIE=s issue to Question 2(a). 





[10]  This is not to
say that we agree that the mold damage was covered as an ensuing loss.  





[11]  In another
question, the jury was asked what sum of money would compensate Diane Sullivan
for mental anguish damages, but the jury did not answer that question having
failed to find that FIE=s conduct was committed knowingly.  





[12]  As noted, the
Sullivans did not file a motion to disregard the jury=s answers.





[13]  AIn all jury cases the court shall, whenever feasible,
submit the cause upon broad‑form questions.@  Tex.
R. Civ. P. 277.  





[14]  The Sullivans
assert that FIE tendered the $15,696.55 unconditionally regarding the
personal-property coverage of their policy and that, if there is no such
coverage, then FIE should not be given credit for this overpayment as to the
personal-liability coverage.  The
Sullivans assert FIE never pleaded for reimbursement and therefore cannot
obtain such a credit.  In its motion for
JNOV, FIE did assert that the Sullivans should take nothing based on the proper
application of the jury=s findings and the amounts already paid by FIE under
the policy.  We disagree with the
Sullivans= argument. 
Nonetheless, even if FIE were entitled to a credit of only $68,798.77,
this amount still means that the Sullivans take nothing on their claims.





[15]  We need not
address FIE=s argument under its fourth issue regarding
presentment.





[16]  We need not
and do not reach FIE=s fifth and sixth issues.