

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BOERNE TO BERGHEIM COALITION FOR CLEAN ENVIRONMENT, | § | |
| | § | No. 08-20-00035-CV |
| Appellant, | | |
| | § | Appeal from the |
| v. | | |
| | § | 459th District Court |
| TEXAS COMMISSION ON ENVIRONMENTAL QUALITY and VULCAN CONSTRUCTION | § | of Travis County, Texas |
| MATERIALS, LLC, | § | (TC# D-1-GN-18-003134) |
| Appellees. | § | |

**<u>DISSENTING OPINION</u>**

The central issue of this case turns on the interplay of two provisions of the Texas Clean Air Act, namely, Sections 382.052 and 382.05198.[1] First, in considering the issuance of a permit to construct or modify a facility within 3,000 feet of an elementary, junior high, or senior high school, Section 382.052 requires the TCEQ to consider possible adverse side effects of air contaminants or nuisance odors from the facility on the individuals attending such schools.[2] Second, Section 382.05198 requires the TCEQ to issue a standard permit for a permanent concrete plant that performs wet batching, dry batching or central mixing when statutory requirements are met.[3]

---

[1] TEX. HEALTH & SAFETY CODE ANN. §§ 382.052 and 382.05198.
[2] *Id.* § 382.052.
[3] *Id.* § 382.05198.

1

The TCEQ argues its protectiveness review of Vulcan's permit application showed an adequate margin of safety existed at the plant's property line such as to protect public health in general and with regard to sensitive individuals in the near area. TCEQ further asserts that Vulcan's permit application complied with the requirements of section 382.05198. And because its review showed compliance with that provision, it further argues the review inherently considered short- and long-term impacts on children attending schools situated within a distance of 3,000 feet of the plant. It asserts its protectiveness review met the plain language of section 382.052 to "consider" adverse side effects on attendees of nearby schools such that site-specific analysis was not additionally needed. For these reasons, TCEQ concludes that any additional air quality analysis for the facility with regard to possible adverse impacts on the Hill Country Montessori School would be duplicative and unnecessary.

The majority agrees with TCEQ's argument and concludes the record shows the agency complied with the school protectiveness review required by Section 382.052. I disagree. Because the TCEQ acknowledges it did not, in fact, conduct an analysis of possible adverse effects of the facility on individuals attending the Hill Country Montessori School, I would conclude it abused its discretion.

## I.

### A. Standard of Review

It is undisputed that the TCEQ's decision falls under the Texas Clean Air Act. *See generally* TEX. HEALTH & SAFETY CODE ANN. §§ 382.001–.510. In an appeal of a decision governed by the Act, courts determine whether the decision is invalid, arbitrary, or unreasonable except when the decision involves a cancellation or suspension of a variance. *See id*. § 382.032(e). To resolve this case, the Court must necessarily construe provisions of the Act. Proper construction of a statute

presents a question of law reviewed de novo. *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016).

When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent as expressed in the text. *Id*. In doing so, we consider the statue as a whole, giving effect to each provision so that none is rendered meaningless or mere surplusage. *Id*.; *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). We presume lawmakers choose statutory language "with care and that every word or phrase was used with a purpose in mind." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). We read words and phrases in context and construe them according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a); *see also TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)("Undefined terms in a statute are typically given their ordinary meaning [unless] a different or more precise definition is apparent from the term's use in the context of the statute[.]"). Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly. TEX. GOV'T CODE ANN. § 311.011(b).

## B. The Texas Clean Air Act

The stated purpose of the Texas Clean Air Act is to "safeguard the state's air resources from pollution by controlling or abating air pollution and emissions of air contaminants, consistent with the protection of public health, general welfare, and physical property, including the esthetic enjoyment of air resources by the public and the maintenance of adequate visibility." TEX. HEALTH & SAFETY CODE ANN § 382.002(a). A facility which emits air contaminants or noxious odors when operating must obtain a permit from the Commission. *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013); *see also* TEX. HEALTH & SAFETY CODE ANN. § 382.0518; 30 TEX. ADMIN. CODE § 116.110. Location and distance requirements are prescribed

for operations of a concrete-crushing facility. *S. Crushed Concrete*, 398 S.W.3d at 677. When issuing a permit, the TCEQ is charged with determining whether a permit application satisfies required provisions of the Act and the applicable rules. *Id*. at 678.

The provisions at issue here are Sections 382.052 and 382.05198 of the Act. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 382.052, 382.05198. Both provisions are located in Subchapter C of the Act, which is titled, "Permits."

First, Section 382.052 provides:

> In considering the issuance of a permit to construct or modify a facility within 3,000 feet of an elementary, junior high, or senior high school, the commission shall consider possible adverse short-term or long-term side effects of air contaminants or nuisance odors from the facility on the individuals attending the school facilities.

*Id*. § 382.052.

Second, Section 382.05198 provides:

> (a) The commission shall issue a standard permit for a permanent concrete plant that performs wet batching, dry batching, or central mixing and that meets the following requirements:
>
> > [List of 19 requirements addressing facility records, equipment specifications, filtering systems, use of control devices, facility operating conditions including maximum production per hour, and paving requirements of roads leading in and out of the facility.]

*Id*. § 382.05198 (a)(1)-(19).

## II.

The TCEQ argues the issued permit satisfied the requirements of Section 382.052 because its protectiveness review demonstrated air contaminants from the plant would not cause or contribute to an exceedance of air-quality standards harmful to human health and welfare; and the executive director lacked authority to require further analysis before granting the permit application. The majority agrees, concluding the protectiveness review confirmed a perimeter of safety at the boundary of the plant, a point which is far closer than the location of the Hill Country Montessori School. The majority concludes the TCEQ considered the possible adverse side effects

4

of the plant on the students at the school because the safety perimeter of the plant placed the school's attendees outside the range of any dangerous short- or long-term effects, and Section 382.052 did not require any further testing. I disagree.

Sections 382.052 and 382.05198 both include mandatory language. First, when a school is located within 3,000 feet of a facility, Section 382.052 provides "the commission *shall* consider possible adverse short-term or long-term side effects of air contaminants or nuisance odors from the facility on the individuals attending the school facilities." *Id*. § 382.052 (emphasis added). Second, Section 382.015198 provides "the commission *shall* issue a standard permit" for a concrete facility that meets the listed criteria. *Id*. § 382.05198(a)(emphasis added).

The term "shall" imposes a duty. TEX. GOV'T CODE ANN. § 311.016(2). Generally, the term is construed as mandatory unless legislative intent suggests otherwise. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex. 1999). In determining whether the Legislature intended a provision to be mandatory, we are instructed to consider "the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction." *Id*. Generally, "courts construe a statutory provision as mandatory when the power or duty to which it relates is for the public good." *Id*.

The plain meaning of Section 382.052 is clear: when a facility is located within 3,000 feet of a school, the TCEQ must consider the possible adverse side effects of air contaminants or nuisance odors from the facility on the individuals attending the school facilities. *See* TEX. HEALTH & SAFETY CODE ANN. § 382.052. The Legislature commands that the close proximity of the facility to the school's location imposes a mandatory requirement on the TCEQ to consider *that facility* on *that school*. This duty relates to the goal of protecting the public health of individuals who are vulnerable such as children attending nearby schools. *See id*. § 382.002 (providing the purpose of

5

the Act is the control and abatement of air pollution and emissions of air contaminants consistent with the protection of public health, general welfare, and physical property, including the esthetic enjoyment of air resources). Similar to the school provision, Section 382.05198 also includes mandatory terms when certain criteria are met. The effect of these two provisions is that they curb the TCEQ's discretion when either is applicable.

The Legislature enacted Section 382.052 in 1989 and Section 382.05198 in 2003. *See* Act effective September 1, 1989, 71st. Leg., R.S., ch. 678, § 1, 1989 Tex.Gen.Laws 2230, 2724 (codified at TEX. HEALTH & SAFETY CODE § 382.052); Act effective September 1, 2003, 78th Leg., R.S., ch. 361, § 3, 2003 Tex. Gen. Laws 1546, 1546-47 (codified at TEX. HEALTH & SAFETY CODE § 382.05198). When considering statutory provisions, we presume the Legislature enacts a statute with knowledge of existing law. *Dugger v. Arredondo*, 408 S.W.3d 825, 835 (Tex. 2013). Accordingly, we should presume the Legislature intended to adopt Section 382.05198 while also knowing about Section 382.052. Yet, there is no cross-referencing of the earlier provision, or any limiting language included in the terms of the later statute. Regardless of the assumptions underlying a standard permit, we otherwise must assume the Legislature was aware of the school protectiveness review which necessarily pertained to any facility located within 3,000 feet of particular types of schools, i.e., those serving younger students.

Rather than interpret the two provisions in a manner inconsistent with the Act's stated purpose, we interpret them as a whole and in context with the entire legislative scheme. *See Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 592, 593 (Tex. 2000). Even if a general provision conflicts with a special or local provision, the provisions "shall be construed, if possible, so that effect is given to both." TEX. GOV'T CODE ANN. § 311.026(a).

The TCEQ acknowledges that "the requirements of section 382.05198 do not include any air-quality analysis or modeling." Given that circumstance, the agency interprets the statute as creating an exclusive list of requirements that cannot be supplemented by additional air-quality testing. TCEQ's issuance package specifically provides that "[a]pplicants are not required to submit air dispersion modeling as a part of any concrete batch plant standard permit application." TCEQ asserts its reading of the statute is consistent with the canon of construction known as *expressio unius est exclusion alterius*. The Supreme Court of Texas describes this legal maxim as "an accepted rule of statutory construction in this state." *Johnson v. Second Injury Fund*, 688 S.W.2d 107, 108 (Tex. 1985). Thus, it is a settled rule that "the express mention or enumeration of one person, thing, consequence or class is equivalent to an express exclusion of all others." *Johnson*, 688 S.W.2d at 109 (quoting *State v. Mauritz-Wells Co.*, 175 S.W.2d 238, 241 (Tex. 1943)). The canon applies when it is fair to suppose that the Legislature considered the unnamed possibility and meant to say no to it. *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 877 (Tex. 2018). Here, however, the flaw with the TCEQ's reasoning is that it fails to account for the fact that Section 382.052 had already been adopted as law at the time when Section 382.05198 was enacted. If the Legislature had wanted to repeal or otherwise limit Section 382.052's application, it could have done so but chose not to. In Texas, amendment or repeal by implication are not favored doctrines. *Gordon v. Lake*, 356 S.W.2d 138, 139 (Tex. 1962).

Additionally, the TCEQ's interpretation renders meaningless Section 382.052's requirement that possible adverse side effects of the facility must be considered on individuals of nearby schools when such facilities lie within 3,000 feet of the school's location. Straying from the statutory language, the TCEQ relies solely on deductive reasoning and inferences. The TCEQ claims no adverse side effects are expected from facilities meeting the listed requirements of the

7

standard permit. That is so, it contends, because the requirements of the standard permit are based on conservative assumptions. The argument made is that Section 382.05198's nineteen requirements are so stringent that any possible adverse side effects are limited to the facility's property line. Based on a logical inference then, the TCEQ argues the Montessori school being situated outside the facility's property line establishes that it was adequately considered by location alone that no air contaminants or nuisance orders would likely reach the individuals attending the school. By that inference alone, the TCEQ argues it can be said that it considered the possible adverse side effects on individuals of the nearby school as Section 382.052 demands.

However, there are two problems with the TCEQ's argument. First, the reasoning does not account for the plain words of Section 382.052, which includes mandatory language. There is no language included in either provision excusing the TCEQ's lack of actual consideration of the possible adverse side effects of the facility on the individuals of the school which meeting the distance requirement. Second, the TCEQ's argument further suggests that *all* schools located outside the property line were considered by the agency by implication. When *all* schools are considered regardless of distance, then it can hardly be said that schools situated within 3,000 feet were themselves considered. A nearby school's location becomes meaningless with this line of reasoning.

Plainly, Section 382.052 requires the TCEQ to consider the possible adverse short-term and long-term side effects of the facility on all schools meeting the distance requirement. To say that the TCEQ considered the public health of all members of the population who are situated outside the plant's property line does not somehow equate to considering individuals at *this specific school* located within 3,000 feet of *this facility*. I would conclude the TCEQ did not meet the requirements of Section 382.052. Additionally, I do not further agree with the majority's

conclusion that TCEQ's response to public comments—where TCEQ described its reliance on the characteristics of the protectiveness review alone—showed it considered the facility's compliance with Section 382.052.

As a reviewing court, we consider a statute as a whole giving full effect to each provision such that none is rendered meaningless or mere surplusage. *See City of San Antonio v. City of Boerne*, 111 S.W.3d at 25. As the parents coalition rightfully argues, the statutory text dictates that the TCEQ must consider the possible adverse side effects on individuals of *this elementary school* relative to *this facility*. Based on the statute's language and appropriate construction principles, I do not agree that TCEQ considered the possible adverse effects on the individuals attending the school as the Legislature intended. If the Legislature had wanted to exclude school protectiveness from a standard permit review, it could have easily added language to either provision addressing that limitation. But, here, no such language was included. In short, the comprehensive nature of the standard permit does not override the mandatory requirement of the school protectiveness provision. Had Vulcan wanted to avoid the requirements of Section 382.052, it could select a plant location more than 3,000 feet of any elementary, junior or senior high school.

Accordingly, I would conclude the TCEQ abused its discretion by relying on a mere inference alone without particularly considering the possible adverse side effects of air contaminants or nuisance odors from the facility on the individuals of the nearby school. Because the majority concludes otherwise, I respectfully dissent.

I would sustain the Coalition's first issue.


August 16, 2022                                    GINA M. PALAFOX, Justice.

Before Rodriguez, C.J., Palafox J. and Ferguson, Judge.
Ferguson, Judge (Sitting by assignment)

9